## Boyd *against* Boyd.

The admission of irrelevant testimony by the circuit court is no cause for a new trial, unless it appears to have done an injury to the party.

Administrators who enter into a joint and several administration bond, and file a joint inventory, are jointly and severally liable for the whole amount of the personal property of the intestate.

Interest beyond the penalty of a bond may be recovered in a court of law in the shape of damages.

APPEAL from the circuit court of *Lancaster* county, held by Chief Justice *Gibson*.

This was an action of debt on a bond of *Amos Slaymaker* and *Henry F. Slaymaker*, executors of *James Boyd* deceased, against *James Boyd*, *John Boyd* and *Samuel Boyd*, administrators of *William Boyd*. A statement of the facts, other than that which is contained in the opinion of the court, is not necessary to the understanding of the principles decided.

*Champneys* and *Norris*, for appellants.
*Montgomery* and *Jenkins*, for appellees.

The opinion of the Court was delivered by

ROGERS, J.—This was an action of debt on bond, in which the defendants relied on three grounds of defence: First. Want of assets. Second. That the testator agreed to release the bond and take Colonel *James Boyd*, the son of *William Boyd*, as a substitute for it. Thirdly. That the bond had been altered, in a material part, when in the possession of the plaintiffs, after it was executed and delivered.

The plaintiffs offered in evidence, a bond of *James Boyd* to *Samuel Boyd*, with this indorsement. " The within bond given to secure the judgment of a debt on bond, *due to the estate of James Boyd deceased*, for which the said *Samuel Boyd* is also liable, but which is the proper debt of the said *James Boyd*, amounting to about 2000 dollars." They also offered the record of a judgment, in the suit of *Jacob Reaper* v. *Samuel Boyd*. The record contains this entry: debt 1400 dollars—judgment entered the 3d of May 1825, on a " Bond, in the above penalty, on a judgment bond, dated the 1st of April 1825, conditioned for the payment of a certain bond or obligation, given by the late father of *Samuel Boyd*, to a certain *James Boyd* late deceased, for about 2200 dollars, including interest; and also conditioned that he shall keep the said *Jacob Reaper* free from all charges and costs, and shall pay all charges and expenses, &c." The evidence was opposed, because it was irrelevant; and this was the only ground on which the counsel relied at the trial, for although when the *bond* was offered, they requested the subscribing witnesses to

[Boyd v. Boyd.]

be called, yet when it was withdrawn and the record substituted for it, this objection was abandoned. This appears from the paper book, and also from the report of the Chief Justice, who tried the cause at the circuit. On a motion for a new trial, it has been repeatedly held, that the admission of irrelevant testimony is no cause of a rehearing, unless it appears to have worked manifest injury to the party. And this it is difficult to show, particularly when the judge before whom the cause was tried is satisfied with the verdict. It cannot be supposed, that the jury paid any attention to testimony which had no bearing on the issue trying. A motion for a new trial is an application to the sound discretion of the court, and is not governed by the strict technical rules applicable to a writ of error. And in this respect this mode of review, which is made with a knowledge of all the testimony, is supposed to have a decided advantage. To retry a cause when there is no injury to redress, would be not only useless, but vexatious and expensive. But let us examine whether the testimony *was* irrelevant. The defendants relied on want of assets; they also contended the testator had released the debt. The bond of *James Boyd* to *Samuel Boyd,* and also the judgment to *Reaper,* was evidence having some bearing on both facts. The weight of evidence is not material. The bond and judgment have direct reference to the debt on which suit is brought; and certainly furnish evidence, from which an argument may be drawn, that there was an existing debt due from the estate of *William Boyd* to *James Boyd;* that whatever arrangement may have been made as to the manner of payment between themselves, yet that the testator never relinquished his lien against the estate of the father. And this argument would derive additional weight from the fact, that it would be against probability that the testator, who had a lien on the whole estate of the father, would be willing to give up the claim, for the personal promise of the son, who had got but a part of the estates. But it is said that *Samuel Boyd* assumed the payment of the debt; that this was such a promise as would support an action by the executors, to whose use it would enure, and that this would be a bar of the suit. If this be so, it was evidence clearly in favour of the defendants, of which he cannot in justice complain. On the contrary, he should have desired the admission of the testimony, and have then prayed the direction of the court, that it was a bar to the plaintiff's demand. But the answer to this position is readily given. The bond was given without the concurrence of the plaintiff. He was no party to the arrangement. How then, can his rights be affected? And besides, even if it were done with his express assent, yet it would be an accumulative remedy; for there is no evidence to show, that the testator relinquished the claim against the estate of *William Boyd.*

This view of the case disposes of the objection to the admission of the plaintiff's testimony. It remains now to consider whether the court erred in rejecting the defendants' testimony. The defendants

[Boyd v. Boyd.]

offered to prove that at the time of the decease of *William Boyd*, *Samuel Boyd*, one of the defendants, was unmarried, and remained so for two years ; during which time, he was a wagoner on the road. That the personal estate in the inventory, except the few articles admitted in his plea, passed into the hands of the other administrators, who transacted the business of the estate ; and they further offered to show, that *they* were the *acting* administrators. The object of the evidence was to ascertain the assets which were actually received by *Samuel*, one of the administrators, with a view of fixing the amount of his liability. The defendants cannot insist, that where there are co-administrators, each is liable only to the amount which came to his hands. That this is true, in regard to executors, who give no bonds, and to trustees, is settled by a train of authorities which puts the law beyond dispute. But does this rule hold where letters of administration are granted to two or more jointly, where they enter into joint bonds and where they file a joint inventory ? Letters of administration were granted by the register, to *James*, *John* and *Samuel Boyd*. They entered into a joint and several bond, with *James Hamilton* and *John Robinson* as sureties. The bond is on this condition, that *they*, the administrators, shall make or cause to be made a true and perfect inventory, &c., and on this further condition, that they well and truly administer the goods and chattels, and credits of the estate. The administrators filed a joint inventory of the goods and chattels belonging to the estate, amounting to 1713 dollars and 73 cents. The suit is brought against all the administrators, two of whom only were served with process ; as *James Boyd*, one of the two served, is dead, the suit is prosecuted against *Samuel Boyd*. The defendants filed a special plea, of which I have searched in vain for a precedent. The case of *Harcourt* v. *Proud*, 1 *Saund.* 333, from which the plea appears to have been taken, bears no resemblance to the plea filed. That was the form of a plea, where the executor retained a portion of the assets, to satisfy a debt due to himself. Where an administrator has assets, but not sufficient to satisfy all the debts, he can protect himself only by pleading a special *plene administravit* of all beyond a sum sufficient to satisfy debts of a higher nature, and to pay the other debts of equal degree, their *pro rata* proportion. *Shaw* v. *M' Cameron*, 11 *Serg. & Rawle* 256. And if no assets whatever came to his hands, the administrators would be protected by the plea of *plene administravit* ; inasmuch as upon that issue, it lies on the plaintiffs to prove affirmatively, that the defendants had assets. And in proof of assets, the plaintiffs may give in evidence the inventory of the personal estate of the deceased ; and when such evidence is given, it is sufficient to throw the *onus* on the executor or administrator, to show how he disposed of the goods and money specified in the inventory. The proper plea was *plene administravit* ; and on the inventory being given in evidence, it was incumbent on *Samuel* to show the disposition which had been made of the property mentioned

[Boyd v. Boyd.]

in the inventory. But this he evades; and, instead, offers to show the property which came to his hands, with the additional fact, that his brothers, and not himself, were the acting administrators. If we suppose that *James* and *John* had committed a *devastavit*, and were insolvent, the effect of the testimony would be, on the grounds assumed in the argument, to throw the whole responsibility on the sureties. For the defendants' counsel contend, that the sureties are bound, that each administrator will well and truly administer the assets, which may be actually received by him; and that this is the extent of the liability of the administrators. They are unwilling to admit his liability even as surety. If, then, a suit is brought upon the administration bond, the co-administrator can be subjected only to the amount he has received, although the creditors may recover the value of all the assets, which come to the hands of all or either of the administrators, from the sureties. But the true rule is (and I am at a loss to see how a different construction can be given to the contract), that on a joint administration, the administrators become responsible for each other as principals. The sureties are bound, that they as principals, without regard to who is and who is not the acting administrator or recipient of the money, will faithfully administer the estate. A different view of the case would be not only against sound policy, but unjust. It frequently happens that sureties enter into the bond, on the faith of the administrator, who receives no part of the assets, in the reasonable expectation that he will personally attend to the management of the estate, that at any rate he will stand between them and loss. They cannot tell who will be the acting administrators. The presumption is, all will act, and on this supposition the sureties have a right to rely, as all are frequently interested in the estates. Indeed, when a different arrangement is made, it is a matter of convenience among themselves, sometimes unknown to sureties and creditors. If the estate is wasted, it is sometimes with the knowledge and frequently with the neglect of the co-administrators. At any rate, blame cannot be fairly imputed to the sureties or to creditors. What difference is it to them who received the money? The only inquiry in which they are interested is, as to the amount of the assets, and the faithful administration of them. If an administrator wishes to protect himself from liability as principal, he may do so by taking the precaution of entering into a separate bond. And this has been frequently done by careful and experienced practitioners, where one of the administrators, as is sometimes the case where the administration has been contested, has been unwilling to become bound, as a principal, for the acts of the other. In this view of the law, we are supported by *Babcock* v. *Hubbard*, 2 *Conn. Rep.* 536. It was there held, that executors who join in a bond to the judge of probate, become jointly liable as *principals* to indemnify the surety, for the default of one of them. *Babcock* v. *Hubbard* was the case of a suit brought by the surety in the bond against one of two executors. It was contended

[Boyd v. Boyd.]

that as the defendant had been personally guilty of no default or misconduct as executrix, she was not bound to indemnify the surety. The defendant said, that when one executor is liable, upon a probate bond, for the default of his co-executor, his liability is only that of a surety or guarantee.   But this conclusion, says Justice *Gould*, is incorrect; for though the liability of each of the executors as parties to the bond, may, *as between themselves*, resemble that of a surety for his principal; yet as it regards the plaintiff, who is to every intent a mere surety, they must clearly be considered as joint *principals*.   For principals in an obligation, as distinguished from sureties, are those of the obligors the performance of *whose duty* the obligation is given to secure.   The result of this then is, that, except as between themselves, it is a matter of indifference, what amount of assets each has received.   Each is bound for the others as a principal, so far as regards sureties, creditors or legatees.

The counsel of the plaintiff in error further complain of the instruction of the court in this, that interest might be given by the jury beyond the penalty of the bond.   In this we perceive nothing of which *they* have a right to complain.   This direction was only material as it related to the allegation that the bond had been altered by the plaintiff.

It has been repeatedly ruled that interest beyond the penalty of a bond may be recovered in a court of law in the shape of damages; and this has been so held in *Harris* v. *Clap*, 1 *Mass. Rep.* 308, even as against a surety.   Whether in all cases interest may be given beyond the penalty on a bond for the payment of money, it is unnecessary to decide; but it is clear that interest may be allowed from the time of demand, or where there has been forbearance at the request of the defendant, or where, as here, the interest was given from the commencement of the suit.   2 *Stark. Rep.* 167; 3 *Caines's Rep.* 48; 3 *Wend.* 444; 2 *Dall.* 255; 3 *Bro. Cha. Rep.* 489; 9 *Cranch* 109; 1 *Atk.* 79; 2 *Gill & Johns.* 279, 280; 3 *Serg. & Rawle* 297; 5 *Johns. Cha. Rep.* 283; 6 *Johns. Cha. Rep.* 1, 452; 7 *Johns. Cha. Rep.* 17; 11 *Serg. & Rawle* 72.

The other reasons for a new trial have been but little pressed, and as, from a view of the whole case, it appears that justice has been done, we are of opinion that the judgment should be affirmed.

Judgment affirmed.