## Commonwealth *against* Forney.

When executors are dismissed, and an administrator *de bonis non*, with the will annexed, is appointed, it is the duty of the court to take a bond from the person appointed, with sureties in an amount commensurate with the powers and trusts contained in the will; and such sureties are liable for the faithful performance of the trusts, and payment of the money which shall come to the hands of the administrator, whether it arise out of the sale of the goods and chattels, or lands of the testator.  But they are not liable beyond the amount of the penalty of the bond.

ERROR to the Common Pleas of *York* county.

The Commonwealth of Pennsylvania, at the instance of John L. Mayer, administrator *de bonis non* with the will annexed of Conrad Sherman, deceased, against Samuel Forney.

This was an action of debt upon a bond in which the jury found the following special verdict:

" Conrad Sherman made his will, wherein, among other things, he provided as follows: — and after his death, his will was, viz, on the 21st of April 1823, duly proved and allowed; on that day letters testamentary were duly issued to the executors named in the will, and on the 15th of February 1825 the executors were on their own petition discharged by the Orphans' Court of York county, and David Shultz was appointed administrator *de bonis non*, with said will annexed; and on the 21st of February 1825, said David, with Henry Shultz and Samuel Forney, the defendant and his sureties, executed before the register of said county, a bond, whereupon letters of administration *de bonis non*, with said will annexed, were duly granted to said David.  On the 1st of March 1830, said David filed an account of his administration, charging himself with $19,402.28, including $2081.50 of personal estate; the rest of said debit being derived from lands in York county, Pa., sold under said will; and on 2d of July 1832, said David filed a further account of his

administration, charging himself with $15,477.57½, including the balance brought from the first account, and also further personal estate amounting to $293.96. These accounts were referred to auditors, on exceptions filed, who reported a balance against said David on both accounts of $17,043.72, including interest; which report was filed in the Orphans' Court on 5th of August 1835, and duly confirmed. On 7th of January 1834, David Shultz was dismissed from the administration; and on 28th of November 1838, the plaintiff was appointed administrator *de bonis non*, with the will annexed, gave bond with surety, and was duly qualified. If the defendant, as surety of David Shultz as administrator as aforesaid in said administration bond, is bound for the faithful application of the money produced by the sale of the real estate of the decedent, then we find for the plaintiff the sum of $17,043.72; if otherwise, we find for the defendant."

That part of the will which is material, is as follows:

" I will, devise and direct, that all the rest of my real estate or lands and tenements, situated, lying and being in the states of Pennsylvania, Maryland and Virginia, together with all the rest, residue and remainder of my goods, chattels and personal estate which is not heretofore devised, shall be sold to the best advantage at public sale or sales, after sufficient notice by advertisement being given of the time, place and terms of sale, by my said executors, whom I do hereby authorize and empower to sell, transfer and convey by good and sufficient deed or deeds of conveyance, to such person or persons that may purchase the same, or any part or parcel thereof."

The following is a copy of the bond upon which the suit was brought:

" Know all men by these presents, that we, David Shultz, of the borough of Hanover, in the county of York, and Henry Shultz, of said borough, and Samuel Forney, of Heidelberg township, in said county, are held and firmly bound unto the commonwealth of Pennsylvania, in the sum of $10,000, to be paid to the said commonwealth, to which payment well and truly to be made and done, we bind ourselves, jointly and severally, for and in the whole our heirs, executors and administrators, firmly by these presents. Sealed with our seals, dated the 21st of February 1825. The condition of this obligation is such, that if the above bounden David Shultz, administrator *de bonis non*, with the will annexed, of all and singular the goods, chattels and credits of Conrad Sherman, late of Manheim township, in the county of York, and commonwealth aforesaid, deceased, do make or cause to be made, a true and perfect inventory of all and singular the goods, chattels and credits of the said deceased, which have or shall come to the hands, possession or knowledge of him, the said David Shultz, or into the hands and possession of any other person or persons for him, and the same so made, do exhibit, or cause to be exhibited,

[Commonwealth v. Forney.]

into the register's office, in the county of York, at or before the 21st of March next ensuing; and the same goods, chattels and credits, and all other the goods, chattels and credits of the said deceased, at the time of his death, which at any time after shall come to the hands or possession of the said David Shultz, or into the hands and possession of any other person or persons for him, do well and truly administer according to law. And further, do make, or cause to be made, a true and just account of his said administration, at or before the 21st day of February 1826, and all the rest and residue of the said goods, chattels and credits which shall be found remaining upon the said administrator's account, the same being first examined and allowed of by the Orphans' Court of the county of York, shall deliver and pay unto such person or persons respectively, as the said Orphans' Court, by their decree or sentence, pursuant to the true intent and meaning of the last will and testament of said deceased, and the law now in force in this commonwealth, shall limit and appoint. And if it shall hereafter appear, that any later will and testament was made by the said deceased, and the executor or executors therein named, do exhibit the same in the said register's office, making request to have it allowed and approved accordingly, if the said David Shultz, above bounden, being thereunto required, do render and deliver the said letters of administration, approbation of such testament being first had and made in the said register's office, then this obligation to be void, and of none effect, or else to be and remain in full force and virtue."

The court below was of opinion that the bond was unauthorized, and the plaintiff could not recover upon it. Judgment for defendant.

*Evans* and *Mayer,* for plaintiff in error. Lands directed by will to be sold are considered as personal estate. 3 *Wheat.* 563; 13 *Serg. & Rawle* 330; 3 *Watts* 289; 8 *Watts* 504; 9 *Watts* 523; 2 *Rawle* 185; 5 *Peters* 160; 8 *Watts* 252. The bond was authorized by law. *Act of 12th March* 1800, *Purd.* (*Ed. of* 1830) 301; 2 *Wms. on Exrs.* 635; 9 *Watts* 252.

*Stevens* and *Barnitz, contra,* cited 3 *Smith's Laws* 156; *Act of* 1705, *sec.* 1; *Act of* 1797, *sec.* 3; 4 *Binn.* 31; 11 *Serg. & Rawle* 442; *Act of* 1800, *sec.* 4; 3 *Smith* 434.

The opinion of the Court was delivered by

Rogers, J.—As an executor is appointed on a special trust and confidence reposed in him by the testator, he is not required, in the first instance, to give security for the faithful execution of the trust. But as the confidence of the testator may be abused, on complaint that the executor is likely to prove insolvent &c. the Orphans' Court may compel him to give security &c. in such

[Commonwealth v. Forney.]

sums, and with such sureties, as they may think reasonable. When such a step is required, it is the duty of the court to have regard to the will, and especially to the value of the estate, whether real or personal ; and when the will contains a power to sell the real estate for payment of debts, or for other purposes, to exact bail sufficiently large to cover the amount arising from the sale of the real as well as the personal property. So on the death of the executor, or when being unwilling or unable to comply with the order of the court, he is dismissed, the same course may and ought to be pursued, as regards the administrator *cum testamento annexo;* for by the Act of 12th March 1800, he has the same powers and authorities as were conferred on the executor. If he has the power to sell, the administrator *de bonis non* has the same power and authority. What, then, is the duty of the court ? It is, I apprehend, clearly to exact security commensurate with the trust contained in the will. If, therefore, the will contains specific powers, by which the land is to be converted into money, security should be taken, that the money, when received, shall be applied as directed by the testator. Unless this precaution be observed, the inevitable consequence will be that the money arising from the sales of the real estate may, and frequently will pass into the hands of persons appointed by the court without any security whatever. But this is in opposition to the whole spirit of the law, which takes a plain distinction between an executor and an administrator ; requiring security from the last, but not from the first, except there is apparent danger that the estate will be wasted or mismanaged. In all cases where the Orphans' Court directs lands to be sold for the payment of debts, (and the power here arises from their appointment, coupled with the directions in the will), the administrator is compelled to give bail for the faithful application of the money. Not one dollar is suffered to go into his hands without adequate security ; and it is difficult to imagine any distinction between that species of administrator, and an administrator with the will annexed, who, by virtue of his appointment, is vested with all the powers of the executor. It is usual, in such cases, in addition to the form prescribed by the Act of 1794, to insert the words, " last will and testament," so as to make it read, " that the administrator will deliver, &c. to such person, &c. as the said Orphans' Court, &c., pursuant to the true intent and meaning of the last will and testament of the said deceased, and the law now in force in this commonwealth, shall limit and appoint." It is said that these words are inserted to secure payment of the specific and pecuniary legacies, and do not extend to real estate. But, without determining the point, it may be remarked, that if this only was the intention of these words they would be unnecessary, as the bond would extend to legacies in its ordinary form. But this construction, to say the least of it, is so doubtful, it would be better that other words should be used, so unequivocal as to put it beyond

[Commonwealth v. Forney.]

doubt or cavil. But, taking it for granted that such is the duty of the court, we have to inquire whether the bond, here taken, renders the sureties liable. Conrad Sherman made his last will and testament, and appointed executors, &c. who were dismissed by the court. Daniel Shultz was appointed administrator *de bonis non* with the will annexed. The administrator settled his account, and charged himself with a large sum of money, principally arising from the sale of certain real estate, sold in pursuance of the directions contained in the will. A bond was given by D. Shultz, with Henry Shultz, and Samuel Forney the defendant, to the commonwealth, in the sum of $10,000, conditioned that Shultz, the administrator *de bonis non* with the will annexed, will make a true and perfect inventory of the *goods, chattels and credits* of the deceased; that he will make a true and just account of his administration, and all the rest and residue of the said *goods, chattels and credits* which shall be found remaining upon the said administration account, &c., shall deliver and pay unto such person or persons respectively, as the said Orphans' Court, by their decree or sentence, pursuant to the true intent and meaning of the *last will and testament* of the said deceased, and the law now in force in this commonwealth, shall limit and appoint. The question is as to the meaning of the words, *goods, chattels* and credits. Lands, in Pennsylvania, are chattels, for payment of debts, but, in ordinary cases, they can be converted into money only on a sale ordered by the Orphans' Court. But, when a will contains a power to sell the land, it may be turned into money either by the executor or the administrator *de bonis non* with the will annexed, without any intervention of the court. The land is sold by virtue of the powers in the will; and if the doctrine insisted on is true, the proceeds may be received without any security, or possibility of obtaining any, except upon proof that the administrator is wasting, or is about to waste or mismanage the estate. But then the question arises, is not the land money because of the directions in the will? When real estate is devised, to be converted or sold for the purpose of distributing the money, a Court of Equity generally considers it as sold from the death of the testator. *Hutchin* v. *Mannington,* (1 *Vez. Jun.* 367) ; *Elwin* v. *Elwin,* (8 *Vez.* 556) ; *Sitwell* v. *Bernard,* (6 *Vez. Jun.* 536). Where there is a trust, that which is ordered to be done, is, in equity, always considered as actually performed. Nothing is better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted ; and this in whichever manner the direction is given. The owner of the fund may make land money, or money land. 3 *Wheat.* 563 ; 1 *Brown's Ch. Cas.* 497 ; *Burr* v. *Sim,* (1 *Whart.* 252); *Simpson* v. *Kelso,* (8 *Watts* 252). As the fund is directed by the will to be turned into money, for distribution, it must be taken as personal

[Commonwealth v. Forney.]

estate, and for this reason, we conceive that the fund is goods and chattels, within the true intent and meaning of the bond.

As this cause goes down for another trial, it may be proper to add that the defendants are only liable to the amount of the bond. In all cases, to secure the performance of collateral acts, as in sheriffs' bonds, and in this case and all cases of a like nature, the sureties may be discharged on payment of the amount stipulated in the bond. It is unlike *Boyd* v. *Boyd*, (1 *Watts* 369), which was a bond for payment of money; where it was ruled that even as against a surety, interest beyond the penalty may be recovered in a court of law in the shape of damages. It is recovered as interest; but in no other way, and for no other cause, can you subject a surety beyond the contract. The bond shows the extent of his liability; and no person ever supposed, that on becoming bail he subjected himself to an indefinite amount, if the principal failed in the performance of his engagement. It would put an end to suretyship, if such was held to be law, as no rational man would be willing to subject himself to so great a hazard.

Judgment reversed, and *venire de novo* awarded.