## JOHNSON'S APPEAL.

## SIMPSON'S APPEAL.

</div>

9    416
19 SC 4576

Though a decree is not pursuant to the prayer of the petition, yet if it was proper under the circumstances appearing on the record, and no objection was taken below on that ground, this court will not reverse.

Where a trustee omits entering the security required on his appointment by the court, they may dismiss him and appoint a receiver.

An answer admitting a loan of part of the trust funds on personal security, authorizes a dismissal of the trustee for mismanagement; nor is it material that some of the *cestuis que trust* approve of the loan.

The Common Pleas has jurisdiction of a testamentary trust vested in the trustees *nominatim*, although they are also executors.

The decree of the court dismissing a trustee on his own petition, is conclusive; although the petition stated he was trustee under a will for A., when in fact he was trustee for A. for life, and for her legal representatives after her death, and notice was given to A. alone, pursuant to the order of the court; and although the trustee appointed in his stead did not enter the security required by the decree appointing him in place of the discharged trustee.

To avoid a decree for fraud, that must be put in issue by the pleadings.

FROM the Common Pleas of Montgomery.

*Dec.* 26. In 1820, Dull bequeathed to Jones, Roberts, and McNeill, or the survivor of them, in trust, to place the fund at interest on real security, and directed his executors to pay the interest of one part thereof to his daughter Mary, for life, and after her death, the principal among her legal representatives equally. And by a subsequent clause, he appointed the said Jones, Roberts, and McNeill, executors and trustees of his will.

These trustees having been discharged by the court, Simpson, one of the appellants, was appointed trustee and received the fund.

In 1846, Simpson petitioned the Court of Common Pleas, setting forth that he had been appointed trustee for Mary McMinn under the will of Dull, and after stating an account, prayed to be discharged from a further execution of the trust. A rule was then granted on Mary McMinn to show cause why the prayer should not be granted. On the return of this rule Mary McMinn filed a petition stating that Simpson had been discharged, and recommending the appointment of Johnson in his stead. The court then made an order appointing Johnson trustee in the stead of Simpson, approving of one Bradshaw as security. And on the same day, they made a decree reciting that a receipt from Johnson to Simpson for the trust funds had been exhibited to the court, and ordering Simpson to be discharged from the duties of the trust.

It will be observed that in these proceedings no mention was made of the fact that any party other than Mary McMinn was interested in the trust.

In October, 1847, four of the children of Mary McMinn filed a petition in the Common Pleas, setting forth the will and the decrees of the court above stated, and averring that Johnson had not given the security required, that they believed the fund was unsafe in his hands, that he was mismanaging it in not investing it in the manner required by the will, but had loaned a portion of it to Mary McMinn, and intended to pay her the balance. That they were interested in the matter, but had received no previous notice of the proceedings of the court. They therefore prayed the court to annul the decree discharging Simpson, and to issue citations to Simpson and Johnson requiring a statement of the manner in which the funds were invested, and for general relief. These citations were issued, and a rule taken on Simpson to show cause why the decree discharging him as trustee should not be annulled.

The answer of Johnson denied that he was mismanaging the fund, but admitted he had loaned $690 to Mrs. McMinn and held

her obligation for the same.   This amount was one-half of the whole fund.

A petition was then presented by four of the children of Mary McMinn, approving of the loan by Johnson to Mary McMinn.

Simpson not appearing to the citation, the petition was taken *pro confesso*, and a reference made to take proof of the facts there alleged, and to report an account.

This report, finding a balance due by Simpson, and the facts as they appeared on the records of the proceedings detailed above, was confirmed.

A rule was also taken on Johnson, to invest the trust funds and give security, which was extended by the court; but not having been complied with, the court dismissed Johnson, and appointed a receiver, to whom they required payment of the trust fund, and delivery of the securities to be made.   From these decrees, appeals were taken.

*Boyd*, for Johnson, and *Watts*, for Simpson, argued that the court had not jurisdiction, the trust being testamentary and given to an executor; that if it had, in cases of such trusts, the court could not proceed against Simpson after his discharge; that the decree of discharge was conclusive, as to every one: 1 Wh. 105; 5 W. 176; 2 Ib. 380; 5 Barr, 428; that it was the duty of the court, and not of Simpson, to see that security was entered by Johnson: 3 W. & S. 353.

That the proceedings were joint, when they should have been distinct.   That a replication to Johnson's answer was necessary, and proof should have been taken before a decree; and that the decrees were not according to the prayer of the petition.

*Brooke*, contrà.—7 Barr, 459, disposes of the question of jurisdiction.   The proceeding was to vacate an order void for want of conformity to the statute, and for fraud.   To enable the court to grant a discharge, all parties must be notified: Act 1836, § 22.   Here, no one but Mary McMinn was notified.   Hence, the decree discharging Simpson was void.   It was also void for fraud; for it is clear from the record, the court could not have made the decrees but under the belief the security was given by Johnson.   On this ground, that decree could be opened, as all judgments or decrees may be: Mit. Eq. Pl. 93; 7 Barr, 139.   No replication was wanted; the facts were all admitted by the answer.

*Jan.* 8. BELL, J.—The 33d section of the act of 14th June, 1836, provides that "the several Courts of Common Pleas shall have the same powers and authorities, and the manner of proceeding to obtain the appearance of persons amenable to their jurisdiction, in cases of trust, and to compel obedience to their orders and decrees, and enforce execution thereof, shall be the same as are now by law vested in and provided for the several Orphans' Courts of this commonwealth." The proceedings here appealed from were had under this act. But they are deformed by the confusion of process and incongruity of action which too often characterize the practice of our tribunals, when the prescribed path diverges from the course of the common law. This unfortunate result of carelessness and inattention mars the symmetry of our system, and often creates difficulties which even a limited regard to wholesome legal forms would avoid. The statutes which define the jurisdiction of the Orphans' Courts, and direct the mode of its exercise, had it not in view to cumber the proceedings of the courts with the elaborate forms of equity pleading, or to require the niceties which time has introduced into the forms used in chancery. But it was certainly to be expected that some attention would be paid to the simple and easy mode of procedure furnished by the 57th section of the act of 1832. That directs, that on the petition of any person interested, setting forth facts necessary to give the court jurisdiction, the specific cause of complaint and the relief desired supported by oath or affirmation, the Orphans' Court, or any judge thereof in vacation, may award a citation returnable at a day certain, &c.; and proceeds to prescribe the manner of its service, return, and the subsequent steps to be taken in the cause. Instead of following these directions, we have, in this instance, an unseemly jumble of the citation given by the statute and the rule to show cause of the common-law courts, the latter, too, requiring the respective defendants to answer why certain things should not be done and certain remedies administered, neither suggested nor specifically prayed for by the petition which initiated the inquiry. These are irregularities that might almost be termed gross. But as they involved no positive injury to the defendants, and no objection to them appears to have been taken below, we do not think they present a ground for reversing the decree. The 19th section of the act of 1836 empowers the court to compel a trustee to perform such acts as are required by or consistent with the duties of the trust; and the 28th section confers the right, generally, to make such orders and decrees as shall be according to law, or the terms and intent of the

trust. These and other provisions of the statute confer plenary power to decree, as was done in this instance, with a single exception, which will be presently noticed. On the return of the writs, it being discovered the specific prayer of the petition and the command of the citations were too narrow to cover the whole subject of complaint, or that the appropriate remedy was not prayed, the proper practice would have been to prefer a new petition, which, like the supplemental bill in chancery, is considered merely as an addition to the original bill. This was not done. But as the defendants were regularly cited under a petition containing a prayer for general relief, we are not inclined to regard such a departure from correct practice as had place here, though certainly not to be commended or encouraged, as fatal to the validity of the decrees pronounced. Where no actual injury is inflicted, we would, for the purpose of sustaining proceedings otherwise correct, view the motion for the rule as a supplemental petition, and the rule itself as in the nature of a citation. This, to be sure, is conceding much to the looseness which prevails in the courts, but we are compelled to it by necessity and the desire of preserving correct decrees arrived at by an irregular process. We do not mean, however, to say what would be the result were exception regularly taken, at the proper time, in the subordinate court.

These remarks sufficiently answer the appellant's third specification of error, namely, that the rules granted and the various decrees made thereon, are not in conformity with the prayer of the petition.

The second specification, complaining that the proceedings against the defendants were joint, is unfounded in fact. It is true there was but one petition, but it prayed for a distinct citation against each of the defendants, which was accordingly awarded, and all the subsequent steps, though parallel, were severally taken against the alleged defaulting trustees. There was, undoubtedly, incongruity in treating both as subsisting trustees at the same moment of time, since, if Simpson was the trustee, Johnson was not, and *vice versa*. But as it will presently be shown, the order reinstating Simpson was illegal and void—the proceeding against Johnson is not impeachable on this ground.

Nor was there error in decreeing against Johnson before replication to his answer. When first appointed a trustee, he was directed by the court to give security for the faithful execution of the trust. It was entirely competent to the court to make the order; yet the new trustee, though he received the fund from his

predecessor, altogether neglected to comply with it. A rule to enforce it was granted on the 25th of October, 1847, which in effect was made absolute on the 15th of the succeeding November, when the time for compliance was enlarged until the 27th of the month. But compliance was still refused or neglected up to the 31st of December, when he was dismissed from the office of trustee. His continued contempt of the order of the court for so long a period, thus jeoparding the safety of the fund, not only justified the action of the court, but imperatively called for it without reference to the answer. But there was nothing in the answer requiring a reply. It does not attempt a denial of, and therefore admits his neglect to give security; and it unequivocally states the mismanagement of the trust fund, by loaning it on personal security, directly contrary to the direction of the instrument by which the trust was created. The case may in fact be regarded as having been heard on bill and answer, and this is equivalent to a demurrer to the answer.

The petition of Sybilla Armstrong and others could work no difference in the duty of the court, for they had no power to alter the law of the trust. It is suggested they are under coverture, but whether or not, it is enough that others having an interest in the ultimate safety of the fund, have invoked the aid of the law.

What has been said, disposes of the whole case, so far as Johnson is concerned, except the objection raised to the jurisdiction of the court. This is based on the statutes regulating the respective jurisdictions of the Common Pleas and Orphans' Courts, in reference to trusts. There has, upon this point, been some confusion of legislation; and the attention of the courts has consequently often been called to the consideration of it. It has been so thoroughly investigated in the decided cases, that a repetition of the argument would be more than superfluous. The result of them is, that where a trust created by will is annexed to the office of executor *ratione officii*, the jurisdiction is in the Orphans' Court; but where it is devolved on a person *nominatim*, and not merely as executor, the control of the trust is in the Common Pleas, though the same person be also named executor. In Wheatly *v.* Badger, 7 Barr, 459, the Chief Justice, after discussing this question of jurisdiction, points out the difference between the duties of a general trustee and those of an executor, and suggests that perhaps the only case in which there is an inseparable union, is where the trust is given to the executor by the style of his office, and not by his name—where it is given to the officer, and not to the man; and

Baird's case, 1 W. & S. 290, shows, that if confidence be reposed in one *nominatim*, in respect to a particular administration of the trust, though the same person be authorized, *as executor*, to administer it in another way, at his discretion, the supervision of the trustee remains to the Common Pleas, until at least the executor, as such, exerts his authority over the subject. In that case, a testatrix devised all her estate to her son W. in trust, to apply the income to the separate use of her daughter E., and afterwards, by the same will, empowered W., *as her executor*, to sell any part of her estate, and to put the proceeds at interest for the same purpose; and it was held the jurisdiction resided in the Common Pleas, no part of the property having been sold. The court declined to express an opinion as to which of the two courts cognisance of the subject would belong, in the event of a sale; though I confess I can see no good reason why a jurisdiction, once attached, should be ousted by a subsequent event, not affecting the continuance of the trust. The principle of that case embraces this. Here the testator *inter alia* bequeathed as follows:—"The remaining four parts or shares I give to my son-in-law, Dr. John Jones, John Roberts, Esq., and Hiram McNeill, all of the county of Montgomery, or to the survivors or survivor of them, in special trust and confidence, nevertheless, that they, the said John Jones, John Roberts, and Hiram McNeill, shall and will place the said four shares or parts out at interest, on land security, and one-fourth part of the interest thence arising, I order my executors to pay annually to my son. The interest of one other of the said parts or shares, I order *my executors* to pay to my daughter Mary, during her natural life; and at her decease, I order my executors to pay the principal sum of one of the said four parts to the legal representatives of my daughter Mary, in equal portions." By a subsequent clause, the testator appointed "Dr. John Jones, John Roberts, Esq., and Hiram McNeill," to be "the executors and *trustees*" of his will. It is thus seen that the custody of the fund is intrusted to three trustees by name, and not by virtue of their office of executors. Though they are afterwards directed to pay the produce of it, as executors, this cannot effect a change of the character in which they hold it. In Wheatly *v.* Badger, the devise was to A. B., executor and trustee, in trust, to improve the estate, and, at an appointed and convenient time, to divide and distribute the whole among particular persons, in particular proportions. The question was one of jurisdiction; and the court say, "the person who was appointed executor was, with the same breath,

appointed a trustee for purposes not within the range of an executor's ordinary duties; and distinct offices were united in the same person, which, however, have no natural connexion, and are easily separable." "It would be as absurd for a trustee to attempt the duties of an executor, as for an executor to attempt the duties of trustee; and it is, therefore, the business of the court to separate the two offices, in a question like the present, *reddendo singula singulis*. As executor, he was to pay the legacies; as trustee, he was the devisee and depositary of the legal title for the accomplishment of confidential purposes, with which the office of excutor has no necessary connexion." Every word of this reasoning is applicable here. This proceeding was to secure the principal sum, and not to enforce the payment of the interest to the legatees. That duty belonged to the persons nominated as trustees; this was incumbent on them as executors. Though it be conceded that the latter is cognisable in the Orphans' Court, it does not follow the former must be so, more than if the individuals authorized to invest the money for the benefit of the legatees, were persons different from those directed to disburse the accruing interest. These functions are essentially different, and may be separately exercised. They are therefore, as in the two cases referred to, to be treated as residing in distinct persons, under the familiar principle that the same person, acting in several capacities, is to be regarded, in respect to the subject-matter of his rights and duties, as different individuals. At all events, this is the most that can be claimed for the appellants.

The result is that, though the decree against Johnson was reached through some irregularities, the record presents nothing by which it can be fatally impeached.

But there is a vital objection to the proceedings against Simpson. Having duly settled his account, in pursuance of the 22d section of the act of June, 1836, he presented his petition to the proper court, praying to be discharged from the office of trustee. Notice of this application was, in obedience to the direction of the court, given to Mrs. McMinn, as *cestui que trust*. On the return of the rule granted for this purpose, she appeared, and by petition, after assenting to Simpson's discharge, prayed the appointment of Johnson as his successor. Accordingly, on the 16th of November, 1846, the court appointed Johnson "trustee for the said Mary McMinn under the said will, in the place of the said Edward Simpson, agreeably to the prayer of the said petition," and approved of one Bradshaw as his surety, though no distinct order for security had been

made. On the same day, Simpson having exhibited Johnson's receipt as trustee for the whole of the trust estate and effects, the court directed it to be filed, and ordered "that Edward Simpson be discharged from the duties of the said trust." Nearly a year after this, viz: on the 3d of October, 1847, new parties appeared by petition, and, after reciting the prior management of the trust, prayed the Court of Common Pleas to annul the decree discharging Simpson, and to order both him and Johnson to exhibit an account of their respective administration of the trust. The court entertained the petition, and, after the proceedings to which reference has been made, on the 25th of October revoked and annulled the order of discharge of the 16th of November, and appointed an auditor to state an account against Simpson. The auditor having performed this duty, by reporting an account copied from that filed by Simpson himself, on the 31st of December, 1847, the court dismissed Simpson and Johnson as trustees, and ordered them to deliver to a receiver the trust-money, books, and papers in their hands. To enforce this order, a writ of sequestration was granted the same day.

The avowed object of this procedure is to make Simpson liable for the fund, which, more than a year before, he had paid to Johnson as his successor in the trust. Was it competent to the court to do this? The grounds upon which it was asked by the petition of the complainants, are, first, that notice of Simpson's application was not given to all the parties interested in the trust; and, second, that Johnson had not given security as trustee, at the time the trust fund was paid to him by Simpson. Upon these suggestions the court seems to have acted. But what is this but an attempt to correct the bygone mistakes of the court itself at the expense of the party? a thing not within its power, as is proved by Hassler's Appeal, 5 W. 176, and by reason independently of authority. There, the effect of the new decree was to fix on a party a debt he had never contracted to pay; here, it is to compel him to pay over again a sum before paid under the order of the court. This is sought to be justified by imputing to the former trustee the oversights committed not by him, but by the tribunal having jurisdiction of the subject. By Simpson's petition, the will creating the trust was brought distinctly in view, and it thus became the duty of the court to designate the persons to whom notice of the application should be given. Mrs. McMinn, alone, was designated, and upon her notice was accordingly served. In this there is no pretence that any imposition was practised or concealment attempted by

Simpson, and, consequently, he ought not to be held responsible for the want of knowledge complained of by the petitioners. So, too, it was incumbent on the court to see that the substituted trustee had given the required security before discharging the prior one: Comth. v. Forney, 3 W. & S. 353; Lockhart v. John, 7 Barr, 137. It was no part of Simpson's duty to instruct the court what it ought to exact. It was sufficient for him that his action in the premises was approved by the proper jurisdiction. This, in the absence of fraud, is sufficient for his protection, and, consequently, the decree of discharge is conclusive, and cannot be unravelled at his expense: Wimmer's Appeal, 1 Wh. 105; Hassler's Appeal, 5 W. 176; Catlin v. Robinson, 2 W. 380; though, perhaps, a mere mistake in a decree is amendable, when the rights of an innocent party are not compromised by the correction.

But the appellees seek, in this court, to sustain the decree appealed from, on the ground of imputed fraud practised by Simpson, Johnson, and Mrs. McMinn, in procuring the decree of discharge. Questionless, a decree obtained by fraud may be impeached by original bill, even without the leave of the court (1 Pr. Wms. 736; 2 Ib. 73; 3 Ib. 111), but then the fraud used in obtaining the decree is the principal point in issue, and necessary to be established by proof, before the propriety of the decree can be investigated. When once shown, the court of chancery will restore the parties to their former situation, whatever their rights may be: Birne v. Hartpole, 5 Bro. P. C. 197, Toml. ed. But the bill must set out the circumstances of the fraud. When this is done, the decree cannot be pleaded in bar, without proper averments, negativing the fraud, supported by an answer fully denying the charge of the bill: Wichalse v. Short, 3 Bro. P. C. 558, Toml. ed.; S. C. 2 Eq. C. Ab. 177; 2 P. W. 74; 6 Ves. 596; Mit. Eq. Pl. by Jeremy, 92–4, 239, 255. In our case, however, the petition contains no hint of fraud committed by the defendants, nor does the record furnish any evidence of its existence. In the absence of such suggestion, no plea or answer was requisite. Simpson might well deem himself safe in resting on the inviolability of the decree discharging him, and this may account for his non-appearance. Were there even proof of fraud, it ought not to affect him here, for he had a right to know it is alleged, and thus have an opportunity to put it in issue before evidence of it can be received. It would be extremely harsh and unjust to charge a trustee on the foot of dishonest practices, without notice of an intent to impeach his conduct on that ground, and an opportunity afforded to make his defence.

But such would be the result were we to affirm this decree for imagined fraud, since it does not appear that fraud in Simpson was averred even *viva voce* in the court below.

Should the appellees deem this ground tenable in point of fact, they may, perhaps, put themselves in a position to show it, by a bill properly formed. I say perhaps, for I will not affirm that, certainly, this course may be pursued. But, in the mean time, the decree, so far as it touches Simpson, must be reversed.

Decree as to Johnson affirmed, and the decree annulling the decree discharging Simpson, &c., reversed.