W. S. JEFFRIES and wife *v.* MARY V. LAWSON.

1. EXECUTOR AND ADMINISTRATOR: MAKING JOINT BOND, EACH LIABLE FOR THE OTHER.—The execution of a joint administration bond by two administrators renders each of them liable for the faithful performance of the duty of his associate as well as of himself; and hence, though one of the administrators may have received all of the assets and conducted the entire administration of the estate, the other is liable to account. See *Boyd* v. *Boyd,* 1 Watts, 365; Still's Appeal, 10 Penna. S. R. (Barr) 152; *Green* v. *Harberry,* 2 Brock. 403; *Lidderdale* v. *Robinson,* Id. 159; *Babcock* v. *Hubbard,* 2 Conn. R. 536.

2. SAME: EFFECT OF ACKNOWLEDGMENT OF LIABILITY FOR ACTS OF ADMINISTRATOR, WHEN MADE BY A LAWYER.—When a positive and absolute acknowledgment of liability for the acts of his co-administrator is made by one cognizant of all the facts, and entirely competent to form an opinion as to the extent of his liability, (as by a lawyer of eminence,) the acknowledgment is conclusive, unless it be shown affirmatively that it was founded on mistake.

APPEAL from the Court of Probates of Warren County. Hon. L. S. Houghton, judge.

*Nye* and *Hill,* for appellants,

Cited *Lidderdale* v. *Robinson,* 2 Brock. C. C. R. 160; *Johnson* v. *Johnson,* 2 Hill, (S. C.,) Ch. R. 293; *Green* v. *Harberry,* 2 Brock. 403; *Fonte* v. *Horton,* 36 Miss. R. 365.

They also cited and commented on *Nolan* v. *Calvert,* 12 S. & M. 273, and same case reported as *Gaultney* v. *Nolan,* 36 Miss. R. 569, to show that these last decisions were made with reference to the hypothesis that the administration bonds were separate and not joint.

*George Fearne* and *George L. Potter,* for appellee.

No memorandum of their argument has come to the possession of the Reporter.

HANDY, J., delivered the opinion of the court:

This was a petition filed in the Court of Probates by the appellants as distributees of the estate of Walter R. Puckett, to compel the appellee to settle the account of her testator, Hugh A. Lawson, who was joint administrator with one Tompkins of the estate of Puckett.

The answer of the appellee states in substance, that the entire charge and management of the business of the administration was in the hands of Tompkins, who received all the property and money belonging to the estate, has made all the settlements with the court and has received all the compensation; and insists that the estate of Lawson is not liable to account.

It appears from the record that administration was granted to Tompkins and Lawson, who executed a joint and several bond with sureties, and returned an appraisement of the estate in the name of both, though the signatures were by Tompkins; that a joint report of sales of personalty was made, but sworn to only by Tompkins; that two annual accounts were returned in the names of both, one of which was signed by Tompkins for both, and the other for himself alone; that a petition was filed by them in their joint names, praying for the sale of the real estate for the benefit of the heirs; and a joint bond executed by them thereupon, and a joint report of sale.

It was proved by the probate clerk that, during the period of

the administration, Lawson came into the clerk's office with another distributee of the estate, and took out all the papers, annual accounts, &c., pertaining to the estate, and examined them with that distributee, who was about making a settlement with the administrators. It further appeared by the testimony of one Bedford, the administrator of Tompkins, that after the death of Tompkins, Lawson had several interviews with the witness in reference to the affairs of Puckett's estate and his connection with it, and repeatedly admitted his liability thereon as administrator; and on one occasion that witness went with Lawson to see one of the sureties on the administration bond of Tompkins and Lawson, who had become uneasy on account of his liability, after Tompkins' death; and that Lawson assured the surety that he had no ground of alarm as he, Lawson, was responsible for all the acts of Tompkins—that Lawson had prepared a final account to be rendered in 1859, but it was never rendered to the court.

It further appeared that all the signatures of Lawson to papers offered in evidence and pertaining to the administration of Puckett's estate were in the handwriting of Tompkins, except a power of attorney executed by Lawson, authorizing Tompkins to apply for and obtain letters of administration in his name and to execute the necessary bond for him, and a letter of Lawson to Tompkins to the same effect, and another power of attorney authorizing T. A. Marshall or Tompkins to sign his name to the bond given on obtaining the order to sell the real estate.

On the hearing the court dismissed the petition, and thereupon this appeal was taken.

The first question presented for consideration is, whether, from the nature of the obligation and duty devolving upon the two administrators from their execution of a joint bond, Lawson is not responsible for the acts of his co-administrator, though it be conceded that Tompkins received the whole of the assets and conducted the entire administration of the estate.

In support of the decree of the court below, a class of cases is relied on in behalf of the appellee, which hold that one executor or administrator is not liable for assets which have come to the hands of his co-executor or administrator and been wasted, by the mere fact that an inventory in their joint names has been re-

turned; or that joining in a receipt with the co-executor is not conclusive upon the other that he has received the money; and that an executor will not, under ordinary circumstances, be responsible for assets which came to the hands of his co-executor; or for his receipt, merely by taking probate, permitting him to possess assets, and joining in acts necessary to enable him to administer. *Hall* v. *Carter*, 8 Ga. R. 388; *Kerr* v. *Waters*, 19 Id. 136; *Ochiltree* v. *Wright*, 1 Dev. & Bat. Eq. 336; *Hovey* v. *Blakeman*, 4 Vesey, 596. And it is contended that, under the rules held in these and similar cases, none of the acts of Lawson in the administration in question create a liability on his part for the assets which are shown to have come exclusively into the hands of Tompkins. But it may be well questioned whether any of these cases would extend the rule of exemption to accounts returned, in the joint names of him and Tompkins, with his sanction or acquiescence.

In these cases it does not appear whether the executors executed a joint bond, or whether each stood upon his own separate responsibility—a consideration very materially affecting their mutual liability for their acts. But here there is a *joint bond*, by which each covenants and binds himself that they will both well and faithfully administer the estate. This is the plain obligation, and it is difficult to perceive how any other construction can be given to it than that each becomes bound not only for himself, but that his associate shall faithfully perform his duty. If either fails, the obligation is broken. If this were not so, what would be the condition of the sureties, in case of a receipt and squandering of the assets by one of the executors who is insolvent, without the knowledge or participation of the other? Each executor has come under the implied obligation to the sureties that they will both faithfully administer the estate. In case of a recovery against the sureties for a *devastavit* committed by one of them, who might be insolvent, but without the participation of the other, could it for a moment be doubted that the sureties could maintain an action against both of them to recover money paid on such judgment? Surely not; for both were under an implied obligation to indemnify the sureties for loss which they might sustain by the unfaithful administration of either. But what is matter

of mere *implied contract* with the sureties is matter of *express obligation* to the obligee of the bond, which by its very terms covenants that they as joint administrators will faithfully administer the estate. It appears to be a manifest perversion of the obligation to put any other construction upon it than that each administrator guarantees the faithful performance of the duty of his associate as well as that of himself.

This view is well sustained by authority. *Boyd* v. *Boyd*, 1 Watts, 365; *Still's Appeal*, 10 Penna. S. R. (Barr) 152; *Green* v. *Harberry*, 2 Brock. 403; *Lidderdale* v. *Robinson*, Id. 159; *Babcock* v. *Hubbard*, (cited in *Boyd* v. *Boyd*, supra,) 2 Conn. R. 536. And we are satisfied that it is sustained by reasons of justice and sound public policy, in promoting faithfulness in discharging the duties of these important trusts.

But, in addition to this, the evidence in this case very satisfactorily shows that Lawson was responsible for the assets of the estate. He is shown repeatedly to have admitted his liability for all the acts of his co-administrator; and that certainly is sufficient to charge him in the absence of any evidence tending to show that his statements were founded in mistake. It appears that he examined the papers and accounts pertaining to the estate, and was a lawyer of distinction. He must, therefore, have known the force of his statements, and it must be presumed that they were made on a state of facts that would justify the admission. It will not do to say that this was mere matter of opinion; for the admissions were made by one competent to form a correct opinion, and cognizant of the true state of facts; and the acknowledgment being positive and absolute, we are authorized to presume the existence of any state of facts in relation to the receipt and use of the assets of the estate, either by himself or by Tompkins with his privity and sanction, which would render him liable.

On both of these grounds we are satisfied that the court erred in dismissing the petition, and are of opinion that the account should have been ordered as prayed for.

The decree is, therefore, reversed, and the case remanded, and an account ordered to be taken in the court below, according to the prayer of the petition.

A petition for a reargument was filed, but overruled.