# Mutual Life Insurance Co. of New York *versus* Girard Life Insurance, Annuity and Trust Co., administrator, to use, etc.

1. The profits of a mutual life insurance company earned, but not declared, as dividends or otherwise, cannot be treated as funds in the hands of the company applicable to the payment of premiums.

2. The directors of a mutual life insurance company declared a dividend as of a prior date out of profits earned prior to such date. During the interval between the date as of which the dividend was declared, and the time when it was actually declared, the premium fell due on a certain policy which was less in amount than the dividend subsequently awarded to said policy, but which was not paid. A loss having occurred under the policy and suit being brought thereon, the company defended on the ground that the same had lapsed for non-payment of premium. *Held*, that it could not be claimed that the company had in its hands at the time the premium fell due, any funds belonging to the insured, which it was obliged to apply on account of ·said premium, and that therefore defendant was entitled to judgment.

3. A. effected a policy of insurance on his life, by the terms of which it was provided, that if the premiums therein stipulated should not be paid on or before certain days, the policy should become void. Out of thirty payments of premiums made by the insured, two or three were accepted when overdue, and on a former trial it had appeared that these payments were received only after inquiries as to A.'s health. It was the universal practice of the company not to receive overdue premiums without making such inquiry. Upon payment of each premium A. was furnished with a receipt containing an express notice, that unless the premium was punctually paid the policy would be forfeited and void, that the receipt of overdue premiums was entirely optional with the company, and that agents were not authorized to waive forfeitures. A. having failed to pay a premium when due, the same was tendered two days afterwards, but was refused by the company. A loss having occurred under the policy, and suit being brought thereon,—*Held*, that the evidence failed to establish such a course of dealing between the parties as

would exclude the company from showing the diseased and intemperate condition of the insured on the date when the premium fell due, as the reason why they refused to receive the subsequent tender of such premium.

March 24th 1882. Before SHARSWOOD, C. J., MERCUR, PAXSON and STERRETT, JJ. GORDON and TRUNKEY, JJ., did not sit. GREEN, J., absent.

ERROR to the Court of Common Pleas No. 4 of *Philadelphia county :* Of January Term 1882, No. 184.

Assumpsit, by the Girard Life Insurance, Annuity and Trust Company of Philadelphia, administrators of Edwin Magarge, deceased, to the use of Sarah R. Magarge, against the Mutual Life Insurance Company of New York, to recover the amount of a policy of insurance issued by the company defendant in the sum of $10,000 upon the life of said Edwin Magarge.

The case was tried before LYND, J., on September 20th 1875, and a non-suit awarded, on motion of defendant, which the court in banc subsequently refused to take off. On error to the supreme court this judgment was reversed and a procedendo awarded. (See 5 Norris 236.)

Upon the second trial before YERKES, J., on November 7th 1878, a verdict was rendered for the plaintiff, but the court subsequently made absolute a rule for a new trial.

Upon the third trial of the case before FINLETTER, J., on November 25th 1879, a judgment of nonsuit was again entered, which the court in banc declined to take off. On error to the supreme court this judgment was reversed and a procedendo awarded. (See 1 Out. 15.)

The case came on for trial the fourth time before LUDLOW, P. J., on December 26th 1881.

Plaintiff put in evidence the policy, which contained, inter alia, the following clause :

" If the said premiums shall not be paid on or before the days above mentioned for the payment thereof at the office of the company in the city of New York (unless otherwise expressly agreed in writing), or to agents when they produce receipts signed by the president or secretary, then in every such case the said company shall not be liable for the payment of the sum assured, or any part thereof, and this policy shall cease and determine.

" It is also agreed that in every case when this policy shall cease and determine, or become or be null and void, all payments thereon shall be forfeited to this company."

It also put in evidence the assignment of the policy to the

[Mutual Life Ins. Co. *v.* Girard Life Ins. Co.]

use plaintiff and proved the death of the insured on February 21st 1872.

It then further proved that the premium of $51 falling due on January 14th 1871, was not paid, and that a tender of the same made on January 16th 1871, was refused. It also showed that out of about thirty prior payments of premiums two or possibly three had been accepted by the company when overdue. It also adduced some evidence to show that the company ordinarily sent notices beforehand when premiums were due, but that no notice had been sent upon the occasion in question. It then further proved that during the year 1871, dividends were declared to all the policy-holders, the amount awarded to the policy in question being in excess of the premium due and unpaid. It further showed that upon several previous occasions the use plaintiff had specially requested her dividends to be applied on account of premiums, a request which the company defendant had invariably complied with in accordance with the provisions of their charter and the supplements thereto them in that behalf enabling.

Defendant put in evidence its charter containing, inter alia, the following clause : "§ 1. The Mutual Life Insurance Company of New York may appropriate its dividends either to the purchase of additional insurance, payable with the policy, or, at the option of the insured, in reduction of or toward the annual payment of premiums on policies; such dividends may be declared every five years or oftener, at the option of the said company."

Defendant then offered to prove by John E. House and other witnesses, that after the policy in suit had been issued, and for some time previous to the 14th of January 1871, the health of Edward Magarge had become impaired by the pernicious habit of using intoxicating liquors, which tended to the shortening of his life; that shortly before the premium of 14th of January 1871, became due, the facts thus stated had been communicated to the agents of the defendant company; that on the 14th, 15th and 16th days of January, 1871, the said Edward Magarge was in a state of actual intoxication from the use of liquor, and was not able to and did not present himself at the office of the company, where the premiums on his policy were payable, though requested by the agents of company so to do on the 16th of January 1871; that the above-mentioned habit continued and increased : that his life was thereby shortened ; and that he died in the month of February 1872.

Objected to by plaintiff. Objection sustained. Exception (First and second assignments of error.)

Defendant then proved by James Musgrave, that the witness had made the tender of the premium to the company de-

fendant on January 16th, that the agent had refused to receive the tender and had requested Magarge to call.

Defendant then offered to prove that witness was on January 16th 1871, and had been from January 14th attendant upon Magarge at a room in one of the hotels in the city, and that on all these days, and afterwards, Magarge was in such a state of intoxication that he was unable to call, or to make payment of any money; that witness administered liquor to Magarge on that day by doctor's direction and that Magarge's intemperance continued until the day of his death. Offer objected to by plaintiff. Objection sustained. Exception. (Third assignment of error.)

Defendant then called as a witness its local agent W. H. Lambert, who testified as follows: "I have been agent since February 1872. I have been connected with the office since March 1866. I remember a tender of premium on the policy of Mr. Magarge on January 16th 1871; I remember declining to receive the premium and requesting Mr. Magarge to call at the office. I have no doubt that I never said a word on the subject of forfeiture. He did not call on that day or the following or any time before his death. No paper was presented or request made for the use of dividend. There was no dividend on the books of the company to Magarge's credit on January 16th 1871. The dividend was declared February 15th 1871. He did not request the appropriation of the dividend of 1871 to payment of his premium. Policy was never marked forfeited on any book of the company here. Five premiums were due and unpaid at the death of Magarge. Forfeiture is when the company direct the cancellation and give formal notice of the cancellation to the assured. A lapsed policy is one which has ceased to exist by reason of the non-payment of the premium on it. A lapsed policy may be restored; a forfeited policy may not be restored. A lapsed policy may be restored on satisfactory certificate of health at any time within twelve months. Mr. Magarge never presented himself or submitted any statement. After 16th January, in the latter part of February or 1st of March the company sent us a statement of dividend of $67.72."

Defendant then asked the witness—"Why did you refuse to receive the amount of this premium when tendered on January 16th 1871?" Objected to by plaintiff. THE COURT: The question as proposed is so general that it may include that which has been repeatedly ruled out by the court. If it is the intention of counsel to prove indirectly the impaired condition of Mr. M.'s health, and the necessity for a new medical examination, the witness is directed not to answer it. If for any other purpose, we pause to hear what that purpose is.

Counsel for defendant. "We propose to show that the

premium was not accepted because of the impaired condition of Mr. Magarge's health on that day."

Objection sustained. Exception. (Fourth assignment of error.)

THE COURT: " I will say further, that as the question before the court and jury is not what particular reason or motive existed at the time for the refusal of the premium, but what was the course of business which had been theretofore established by the company, and I shall adhere to my ruling, for if the course of dealing has not been established, the motive of the agents of the company, even if malicious, is irrelevant, and if a course of dealing has been established, the legal rights of the defendant cannot be affected by anything which subsequently happened for the reason therefor."

It further appeared that the dividend in question although not declared until February 15th 1871 had been under consideration by the Board of Directors since January 1st of that year, and that in the resolution declaring the dividend it was expressly stipulated to be as of January 1st 1871.

Defendant then further proved that every receipt issued by it for premiums had the following notice annexed.

## "NOTICE TO POLICY HOLDERS.

" The agreement is mutual (see application and policy), that unless the premium is paid on or before the day it becomes due, the policy is forfeited and void. Agents are not authorized to make, alter or discharge contracts, or waive forfeitures. Payments of premiums to agents are not valid unless receipts be given, signed by the president, secretary, cashier or actuary. When receipts are sent to agents for delivery, such agents shall countersign the same, as evidence of payment to them. All payments are due and payable at the office in New York. For the convenience of the assured, they may be made to an agent, but only upon the production of the receipt above specified."

Defendant further proved that its uniform custom was not to receive payments of premiums overdue without first satisfying itself of the sound health of the insured.

The court, after reviewing the evidence, charged, inter alia, as follows :—

From the evidence thus produced you must settle the first question of fact which I shall submit to you, viz. :

What was the course of dealing between the company and Magarge ; was it such that he might reasonably presume, that days of grace, so to speak, would be given to him for the payment of his quarterly premium ?

Upon the question thus presented, I say to you, gentlemen,

that if you believe from the evidence, as a matter of fact, that the course of dealing of the company with the assured was such as to lull him into a fancied security, and to make him believe that he would be entitled to days of grace, your verdict upon this point should be for the plaintiff.

On the other hand, if you believe that the transactions of the company with Magarge were not such as to mislead a reasonable man transacting the business referred to, you ought on that point to find for the defendant. The principle upon which this doctrine rests, is plain. The contract expressly provides for the punctual payment of the premiums. Nothing but the act of the company, could save the policy to the assured, after he had neglected to pay a premium at maturity. The evidence that the company had so acted as to establish a certain course of dealing which, in reality, extended the terms of the contract, should be clear and persuasive.

I have purposely excluded evidence of the health of the assured on the day of the default, because, if the company did no act by which it would be bound to receive a premium after its maturity, the policy expired then and there, and by its own terms, and if they did any act by which they extended the terms of the contract, the health of the assured, no matter what may have been its condition, and however caused, could not affect the validity of the policy. If the company intended to change a certain course of dealing with the assured, assuming that the jury find as a fact in this case that the course of dealing existed, then the assured was entitled to notice that the original contract would be enforced, and that another overdue premium would not be received until the terms specified by the company, whatever they might be, had been complied with. . . . . . . . . .

The second question which is presented for your consideration arises out of these facts : By the books of the company it appears that in a certain year, to wit, 1871, the following entry was made, among others : " Cash value, $67.72." You will remember the quarterly premium was $51. It is also in evidence, that the entry above specified was not placed upon the book until the very end of February or the beginning of March of that year, certainly after the 14th of January, 1871. It is also in evidence that from time to time dividends were declared upon the several policies issued by the company, and were carried at some time to the credit of the several policy-holders. It is the province of the jury to decide when the entry made in this case was made and to what period of time it applies.

[If the jury determine that although the dividend was not declared, until long after the day upon which the premium fell due which was not paid, viz.: 14th of January 1871, yet

4 Outerbridge.—12

if it represents the money made before the 14th of January 1871, or, in other words, if the jury find that the sum of $67.72, entered upon the books of the company, represented the fund realized as a dividend to policy No. 28,375, and was earned and in the possession of the company on January 1st, in the year 1871, then I instruct you, in the language of the supreme court: "It would be inequitable, and against the policy of the law, to permit an insurance company to forfeit a life policy for non-payment of a premium, when such company has in its possession the money of the assured to an amount covering the premium, and which it has power to apply to its payment.]"

Verdict and judgment for the plaintiff in the sum of $16,875.18. Defendant thereupon took this writ, assigning for error, inter alia, the rejection of its offers of evidence and the portion of the charge above cited in brackets, the latter constituting the eighth assignment of error.

*William W. Porter* and *William A. Porter* (*Henry J. McCarthy* with them), for the plaintiff in error.—The court was in error in rejecting defendant's first two offers of evidence. The course of dealing between the parties as to receipt of overdue premiums applied only when the insured was in good health; Mowry *v.* Insurance Co., 9 R. I. 346; Rockwell *v.* Mutual Life Insurance Company, 20 Wisc. 335; Bouton *v.* American Mutual Life Insurance Co., 25 Conn. 542.

Defendant's offer was to show that insured was not in good health, and should therefore have been received.

The company could only appropriate dividends to premiums at the option of the insured. Here no option was exercised. Besides, at the time the premium fell due no dividend had been declared, and until so declared no policy-holder had any interest in or right thereto, although the amount thereof may have been earned: Moss' Appeal, 2 Norris 264.

There was no general custom among life insurance companies to receive overdue premiums shown. The plaintiff relied on a course of dealing to that effect between the insured and the company. But the few instances of receipt of such overdue premiums shown, were insufficient to establish such a course of dealing, particularly in view of the express notice attached to each receipt: Mentz *v.* Lancaster Fire Ins. Co., 29 P. F. S. 475; Bouton *v.* American Mutual Life Ins. Co., 25 Conn. 542; Busby *v.* North American L. I. Co., 4 Big. Life & Acc. Ins. Rep. 116; Catoir *v.* American Life Ins. & Trust Co., 4 Vroom 487; New York Life Ins. Co. *v.* Statham, 3 Otto 36.

*John J. Ridgway, Jr.* (with whom was *Daniel Dougherty*), for the defendant in error.—The receipt by the company upon prior occasions of overdue premiums established a course of dealing between it and the insured, of any departure from which the insured was entitled to notice : Insurance Co. v. Wolff, 5 Otto 326 ; Helme v. Insurance Co., 11 P. F. S. 107.

The question of the health of the insured had nothing whatever to do with the question at issue, which was the established course of dealing between the parties ; evidence on that point was, therefore, properly refused. The court will be apt to seize any circumstance which will prevent a lapse or forfeiture of a policy : Insurance Co. v. Eggleston, 6 Otto 577.

The fact that a dividend had been earned for the prior year and was at the time of the falling due of the premium standing on the books of the company as surplus, rendered it inequitable to forfeit the policy or declare it lapsed.

Mr. Justice PAXSON delivered the opinion of the court, April 24th 1882.

This case has been here twice before. See 5 Norris 236, and 1 Outerbridge 15. Each time it has presented some new features which were not covered by previous rulings. Other matters which were hotly contested, appear to have dropped out of the case. The issue has now been narrowed down to one or two points which we will proceed to dispose of without further preliminary remark.

The first question which I propose to discuss is distinctly raised by the eighth assignment of error, in which it is complained that the learned judge instructed the jury "that although the dividend was not declared until long after the day upon which the premium fell due which was not paid, viz : 14th of January 1871, yet, if it represents the money made before the 14th of January 1871, or, in other words, if the jury find that the sum of $67.72, entered upon the books of the company, represented the fund realized as a dividend to policy No. 28,375, and was earned and in the possession of the company on January 1st in the year 1871, then I instruct you, in the language of the Supreme Court : ‘ It would be inequitable, and against the policy of the law, to permit an insurance company to forfeit a life policy for non-payment of a premium, when such company has in its possession the money of the assured to an amount covering the premium, and which it has power to apply to its payments.’ "

The language quoted by the learned judge below from the opinion of this court in 1 Outerbridge, was based upon an offer of plaintiff in the court below to prove that the defendant company had declared a dividend or division of its surplus

among the policy-holders on January 1st 1871. This was four-teen days before the quarterly premium on Mr. Magarge's policy fell due, and we held that inasmuch as the amount of the divi-dend (we call it by that name for the purpose of convenience) was admittedly larger than the premium, it did not matter that the precise amount had not been ascertained. It having been declared on the first of January, it was due the assured, and no delay in the matter of book-keeping could deprive him of his right, or justify the company in forfeiting his policy when they held his money which they might and ought in equity to apply to the payment of the premium. We adhere to that ruling still. It is sound law as well as good morals ; and if observed by life insurance companies in good faith would do much to restore public confidence in such institutions. Unfortunately for the plaintiffs below, they did not prove the offer on which our rul-ing was based. The uncontradicted evidence was that the div-idend was declared on the 15th of February 1871, which was one month after the premium fell due. It is true it was under consideration by the committee of the board from the 1st of January, but no action was had until February. That the div-idend was earned during 1870, and was declared for that year, is not to the purpose. It needs no argument to show that neither a stockholder nor a policy-holder has any right to the earnings of a corporation until a division or dividend has been declared by its board of managers. This rule is laid down and the prin-ciple discussed in Moss' Appeal, 2 Norris 264. So that at the time Mr. Magarge's premium matured there was no fund in the hands of the company which the latter or Mr. Magarge had the right to apply to its payment. With the non-payment of the premium on the day appointed, the policy lapsed by virtue of the contract between the parties, unless there was something to take it out of the ordinary rule. There was no occasion of a formal forfeiture on the part of the company. While the word "forfeiture" has been used in former opinions it is not strictly applicable to the facts of the case. The contract of life insur-ance is really a contract for an insurance for one year in consid-eration of an advance premium, with the right of the assured to continue it from year to year upon payment of the premium as stipulated. The assured is not bound to pay anything, and may drop his policy at the end of any one year. He does drop it and the company is relieved, if he does not pay. In such case there is a lapse of the policy.

We think it would be carrying the rule beyond any recog-nized principle to hold that profits earned but not declared as dividend or otherwise could be treated as funds in the hands of the company applicable to the payment of a premium. *Non constat* that such division ever will be made. That it was

subsequently done in this case is not to the point. A change of times, or heavy losses by the company at any period prior to the 15th of February, might have prevented it. Had Mr. Magarge called at the office on the 14th of January, and demanded the application of the profits to the payment of his premium the company could then have refused it. No policyholder has the right thus to direct its affairs.

This brings us to the consideration of the remaining question. It will be observed by reference to the former decisions that one of the reasons assigned by the plaintiff below why the defendant company should have received the premium tendered on the 16th of January, was that there was a custom among such companies to allow days of grace; that is to say, a certain time after the premium falls due, within which it may be paid. It was held by this court in Helme *v.* Insurance Co., 11 P. F. S. 107, and in this case in 5 Norris, that such a custom might be shown. No such question was raised upon the present trial. The issue was narrowed down to a matter of previous dealings between the parties, the plaintiffs below contending that by accepting overdue premiums from time to time the company had induced Mr. Magarge to believe that such after-payments would be accepted in the future, and that to refuse to do so without notice and without warning was an act of bad faith. The facts are that out of about thirty quarterly payments of premium, two were paid two days after maturity, with one payment in dispute. With each payment a receipt was given by the company to the assured containing a notice of which the following extract is a copy: "The agreement is mutual (see application and policy) that unless the premium is paid on or before the day it becomes due, the policy is forfeited and void. Agents are not authorized to make, alter or discharge contracts, or waive forfeitures." It will be noticed that in the report of the facts of the case in 5 Norris, as well as in the opinion of Mr. Justice TRUNKEY, the two overdue premiums referred to were accepted after inquiries as to the state of Mr. Magarge's health. This fact does not clearly appear in the present case. The question was asked the witness W. H. Lambert, at page 63 of the bill of exceptions, "why premiums due October 14th 1867, and April 14th 1870, were received after they were due," but it does not appear to have been answered. There was evidence, however, that it was the uniform practice of the company not to receive overdue premiums, without inquiry as to the state of the health of the assured, and that a lapsed policy may be restored on satisfactory certificate of health at any time within twelve months. The omission to have the above question answered was doubtless an oversight at the trial, but in view of the rule just stated of the fact that but two after-

[Reimer's Appeal.]

payments out of thirty were proved; that every receipt contained a warning to the assured, that the receipt of such payments was optional with the company; to say nothing of the ·fact, appearing upon the former trial, that the two payments referred to were received only after inquiries as to Mr. Magarge's health, we are constrained to say that the evidence fails to establish such a course of dealing between the parties as will exclude the company from showing the reasons why they declined to receive the premium on the 16th of January. There was evidence, if believed by the jury, that when it was refused, they sent word to Mr. Magarge to call. This was disputed, and it is not material. If Mr. Magarge desired to be reinstated it was his duty to call and make the necessary explanation and satisfy the company as to his state of health. In each of the former opinions attention was called to the fact that no reason had been given why the premium was refused on the 16th of January. In the light in which the case now stands, it is only fair to the company that they should be allowed to show this.

In view of the ruling of the court below referred to in the eighth assignment it is easy to see why the learned judge excluded this evidence. If the premium had been paid in law and in fact when due by the application of the surplus, it became wholly immaterial why the company refused it on the 16th of January. But in the view we take of the case it was important.

Without further elaboration we sustain the first, second, third, fourth and eighth assignments of error, which it is believed substantially cover the case. Whatever of error there may be in those that are not specifically referred to, is sufficiently explained by what has been said.

Judgment reversed and a venire facias de novo awarded.