NEUBERT, Appellant, v. EVANGELICAL MUTUAL INSURANCE CO., Respondent.

(226 N. W. 552.)

(File No. 6598. Opinion filed August 3, 1929.)

*Hanten, Hanten & Henrikson,* of Watertown, for Appellant.
*Earl S. Farley,* of Milbank, for Respondent.

MISER, C. This appeal is from a judgment. The sufficiency of the evidence to support the findings on which it is based is not questioned. The trial court found the facts as follows:

Defendant, respondent herein, is a state mutual insurance company organized under the laws of this state. On July 20, 1925, H. R. Schultz had a contract for the purchase from one Jones of land in Grant county. On that day, Schultz paid to respondent $11.75, and respondent issued to him a South Dakota standard form of policy against loss by fire and cyclone. The total insurance of the policy was $10,750, $4,500 of which was on a barn and $200 was on a silo. Prior to August 8, 1925, Jones assigned to plaintiff, appellant herein, his contract with Schultz for a deed to said land. On August 8th, at the request of appellant and Schultz, a "Contract for Deed—Loss Payable Clause," as prescribed by section 9198, Rev. Code 1919, was attached as a rider to the policy by the secretary of respondent. On that day the policy was delivered by Schultz and respondent company to appellant. On August 29, 1925, the barn was damaged in the sum of $200 by a cyclone. Schultz gave respondent prompt notice thereof.

Early in September, 1925, respondent sent its treasurer

to adjust the loss. The treasurer left with Schultz's wife on the farm a written order directing Schultz to repair the damage and send the bill to respondent insurance company. Respondent did not itself either repair the barn, or pay the loss, or offer to do so, and by its conduct waived any defect in the giving of notice or formal proof of loss. Prior to October 1, 1925, respondent mailed to Schultz a notice that on September 4, 1925, the annual assessment of 7 mills per dollar risk had been levied. The notice proceeded thus:

"The amount due on your policy is as follows: Policy No. 9885, Amt. Insured $11750, Assm't $82.35. This assessment will be due and payable October 1st. However, 30 days' grace will be given in which payment may be made. All members failing to pay their assessment within 30 days from October 1st, will forfeit all their rights under their policy until such payment is received by the treasurer."

Because of respondent's failure to pay the cyclone damage of $200 occurring on August 29th, Schultz did not pay the assessment levied September 4th. During the month of November, respondent mailed Schultz a notice, headed "Second Notice," which was as follows:

"The annual assessment on your policy No. 9885 amounting to $82.35 is still unpaid. We feel confident that this was merely overlooked by you, and that you desire to keep your insurance in force. If you have already paid your assessment, please send us the number of your receipt. Policy becomes owner's risk after November 1st, until paid. Prompt payment of your assessment will enable us to make prompt settlement of losses. We are giving you the best protection at a moderate cost, and you surely cannot afford to allow your policy to lapse. Therefore please remit at once. DO IT NOW! Please return this notice with your assessment."

During the month of November, Schultz made demand in person of respondent that it pay $200, and was again told to repair the barn and send in the bill. During the month of December, 1925, respondent mailed Schultz a notice headed "Third and Last Notice," which, except for the heading, was identical with the second notice. No notice was ever mailed to appellant, and the first notice appellant received of the assessment was on July 26, 1926. Appellant makes no point of this, however. On July 24,

1926, the barn and silo were totally destroyed by fire. Immediately after the fire, Schultz gave respondent notice of the loss; but respondent denied all liability and claimed the policy was not in force on July 24th, and respondent thereby waived any defect in the furnishing of proof of loss. The court found that appellant and Schultz had performed all the terms and conditions of the policy, and of the rider attached thereto, on their part to be performed, except that the assessment of September 4th—which should have been $75.25, instead of the $82.35 specified in the notices—was not paid.

On the foregoing facts the court concluded that appellant was entitled to recover from respondent $200 for the cyclone loss of August 29, 1925, but that appellant was entitled to recover nothing for the fire loss of July 24, 1926, because the policy was not then in effect by reason of the failure of Schultz to pay the assessment of September 4, 1925. Thereafter judgment in accordance with the foregoing conclusions was entered. This appeal is from the judgment only.

Of the three grounds for reversal relied upon by appellant, we discuss herein only one, namely: Respondent, having refused to pay the loss of August 29th, could not suspend the policy for nonpayment of an assessment in a less amount than the damage due the insured on account of the loss of August 29th.

In Cooley's Briefs on Insurance (2d Ed.) p. 2912, it is stated: "A mutual insurance company cannot suspend a member for failure to pay an assessment, where, at the time of such failure, the company is indebted to him, on a loss under the policy, in a sum in excess of the assessment. Freeman v. Farmers' Mut. Fire & Lightning Ins. Co., 121 Mo. App. 532, 97 S. W. 225."

In the case cited, two calves of the insured member had been killed by lightning in July; in November, his barn was destroyed by fire. The insurance company claimed that the member stood suspended by reason of nonpayment of assessment due in September. Therein, as in the case at bar, the member contended that the insurance company could not suspend him for nonpayment of an assessment, when, at the time, it owed him a sum greater than the amount of such assessment. As to this, the court said:

"The judgment in favor of plaintiff for the loss of the calves determines that defendant did owe plaintiff at the time of the assessment a sum which it is conceded was greater than the assess-

ment. * * * There seems to be established, upon good reason, a rule which certainly commends itself on the ground of justice. It may be stated to be that where two parties are under a contract with each other imposing mutual duties, and whereby one of them, upon default of a payment by the other, is privileged to declare a forfeiture against such other, no forfeiture for such nonpayment can be declared or enforced while the one seeking to enforce the forfeiture owes the other a greater sum than he claims has not been paid. Thus, it is stated by Niblack on Insurance, § 271, 'that a society which has money in its possession belonging to a member, and the power to so apply it, must pay out of such money an assessment due from the member, to save a forfeiture of the contract.' "

To the same effect, see Pfeiffer v. Missouri State Life Ins. Co., 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600; Security Life Ins. Co. v. Matthews (Ark.) 12 S. W. (2d) 865; also 32 C. J. 1308.

In Cooley's Briefs, on page 3747, it is said: "Where the society was indebted to plaintiff for sick benefits due, the policy could not then be forfeited for nonpayment of dues or assessments." Many cases are cited therein in support of the foregoing statement. They are not cited herein, because, being based on sick benefits due from various mutual benefit associations, their value as precedents in a case where a claim of nonforfeiture is based on damages due from a mutual fire insurance company is subject to question. They are valuable, however, as applying the general principle first above stated.

But respondent contends that Schultz's claim for the cyclone loss was an unliquidated and disputed claim against the insurance company, and that, consequently, Schultz was not entitled to offset it against the assessment. Respondent cites Stutzman v. Cicero Mut. Fire Ins. Co., 150 Wis. 254, 136 N. W. 604. In that case, as a justification for not paying an assessment, the insured claimed that 4 or 5 years before the assessment was made, and 6 or 7 years before the loss for which the action was brought, he had sustained a loss that had not been paid. The court said that, under the evidence, if any such claim ever existed, it was trifling in amount and was permitted to slumber without action. The court concluded:

"In any event the existence of *such an unliquidated* and disputed claim would afford no justification for refusal to pay the

assessment under the policy, or relieve the respondent from the penalty of failure to pay during suspension. Joyce on Insurance, § 1237; Mutual L. Ins. Co. v. Girard L. I. A. & T. Co., 100 Pa. 172."

A comparison of the claim in that case, trifling in amount, the existence of which the evidence left in doubt, claimed to have arisen four or five years before the assessment levied, as in the' Stutzman Case, with the claim in the case at bar for $200, arising a week before the assessment, twice demanded by the insured, at least once after notice of the levy, as in the case at bar, shows the dissimilarity of the facts. In the Stutzman Case, the claim is said to be "unliquidated and disputed." In the case at bar, respondent insurance company admitted its liability for the former loss, if not the amount thereof. Under the terms of its policy it could have either paid the claim in the adjustment of which its treasurer inspected the damaged property, or, at its option, it could have repaired the barn. It did neither. Twice, however, it admitted its liability for the actual damage. The trial court found it to be $200. Certainly we have here no "such an unliquidated and disputed claim" as was considered in the Stutzman Case. The facts in the Stutzman Case were such as to justify that court in making the declaration therein made.

Moreover, the most casual reading of the opinion in Mutual, etc., Co. v. Girard, etc., Co. 100 Pa. 172, on which the Stutzman Case was based, discloses many points of difference with the case at bar. That was a life insurance case. The credit claimed by insured as preventing forfeiture was a dividend. The dividend was not declared until a month after the premium fell due. This is a claim against a state mutual fire insurance company. The first loss occurred on August 29th. The company was notified at once. The company did not pay the damage, nor repair the barn, but inspected the property and requested the insured to repair the barn and send in a bill. The trial court found that, by reason of the loss occurring on August 29, 1925, seven days before an assessment of $82.35, which it found should have been $75.25, respondent became indebted to Schultz and appellant for $200, and allowed judgment for that sum, with interest from that date. The facts of the two cases are different. The law also is different. If respondent company is a *state* mutual company, as appellant avers and as the court

found, although the pleadings alleged, and respondent claims, that it is a *county* mutual company, then certain statements of the law in the Pennsylvania case are not applicable. No useful purpose would be served by enumerating the differences which a comparison of sections 9223-9243, Rev. Code 1919, relating to state mutual insurance companies, with the law as stated in the Pennsylvania case cited, would disclose. Even in that case, although stating that the facts of the case did not bring it within the rule, the court approved the following instruction:

"It would be inequitable, and against the policy of the law, to permit an insurance company to forfeit a life policy for nonpayment of a premium, when such company has in its possession the money of the assured to an amount covering the premium, and which it has power to apply to its payments."

Indeed, the principle of the various cases hereinbefore mentioned is the same. Only in the Freeman Case do the facts permit its application. We are of the opinion that the facts in the Freeman Case, which were held sufficient to waive a forfeiture for nonpayment of assessments, presented no stronger equities than do the facts in the case at bar.

The judgment must be reversed, and a new trial ordered.

SHERWOOD, P. J., and POLLEY, CAMPBELL, BURCH, and BROWN, JJ., concur.