Peters et al., Appellants, *v.* Colonial Life Insurance Company of America.

22

Argued April 16, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Samuel G. Wagner,* with him *Harry Shapera,* for appellants.

*William H. Eckert,* with him *Smith, Buchanan, Scott & Ingersoll,* for appellee.

OPINION BY STADTFELD, J., July 15, 1937:

This is an action of assumpsit by the beneficiaries to recover upon a policy of life insurance issued by the defendant on March 27, 1930. The policy required the

payment of a semi-annual premium of $29.20 on the 27th day of each March and September. After paying three semi-annual premiums the insured, Sarah V. Grentzer, failed to pay the premium which was due on September 27, 1931, or within the thirty-one day grace period granted under the policy. The policy therefore lapsed for non-payment of the premium due on September 27, 1931.

Quoting from the opinion of the lower court: "On November 2, 1931, Lubeck, an agent of the defendant company, received from Mrs. Grentzer her signature to an application for reinstatement together with check for $35.20, which admittedly included the $29.20 premium due on this particular policy. The reinstatement provision in the policy reads as follows: 'If this Policy shall lapse for non-payment of any premium when due, it may be reinstated at any time upon written application with evidence, satisfactory to the company, of the insurability of the Insured and the payment of all overdue premiums with interest at the rate of six per cent, per annum.' . . . . . . It was the plaintiff's contention that compliance with the reinstatement provision of the policy had been waived by the conduct of the company. In support thereof plaintiffs offered, through their witnesses, testimony to the effect that when the agent called at the Grentzer home, received the check and the signature to the application for reinstatement, he did not secure answers to the questions which were on the printed form, but that the agent left, taking the blank form, returned to the office of the company, where he gave to the cashier the check for the premium and the blank form. At that time and place, certain answers given by the agent to the cashier were filled in upon the form and turned over to those in charge of the office; that the check for premium was subsequently deposited and paid and that subsequently, on November 10, 1931, Mrs. Grentzer died;

that after the death of Mrs. Grentzer when claim was made by the plaintiff beneficiaries, the company tendered the premium of $29.20, which was refused.

"Contradicting this testimony was that relied upon by the defendant to indicate that no waiver of the reinstatement provision of the policy had been intended or made. It was the testimony of the defendant's witnesses that when the reinstatement application, together with the premium check were received at the local office by the cashier there from Lubeck, the agent, that immediate steps were made to turn over one of the attached slips on the application for reinstatement to Dr. Thompson, examining physician for the company, who made two unsuccessful attempts, one on Nov. 4, 1931 and the other on Nov. 10, 1931, to interview the insured; that his failure in that regard was promptly reported to the company and that at no time did they do anything further with regard to the policy.

"The question of whether or not the conduct of the company constituted a waiver was properly submitted to the jury under adequate instruction and by them resolved in favor of the defendant when the jury returned a verdict for the plaintiff in the sum of $29.20, representing the last premium paid."

Plaintiffs' motions for judgment non obstante veredicto and for new trial were overruled, whereupon plaintiffs appealed.

Was the policy in this case ever reinstated? Under its terms, to renew a lapsed policy, the company required "evidence, satisfactory to the Company, of the insurability of the Insured and the payment of all overdue premiums." This court, in *Mitchell v. Alta Life Ins. Co.*, 116 Pa. Superior Ct. 490, 491, 176 A. 785, quoted with approval the following language: " 'But the mere payment of the premium was not of itself sufficient to reinstate the policy. It was also necessary that the insured produce evidence of the

insurability satisfactory to the defendant. There is no evidence whatever that the insured ever complied with this provision, and, since the burden was upon him to do so, we must presume as a matter of law, that he did not.'" We there stated, p. 493: "The plaintiff's difficulty is that his evidence fails to show that the policy was renewed after it had lapsed by proving that evidence of the insurability of the deceased had been furnished to the company ...... He, therefore, did not make out a prima facie case."

To the same effect is *Fishman v. Eureka-Maryland Assurance Corp.*, 120 Pa. Superior Ct. 490, 183 A. 98, wherein President Judge KELLER made a comprehensive review of the cases on this question and said on pp. 498, 499: "The policy and the law of the State provide that the holder applying for reinstatement of the policy must produce evidence of his insurability satisfactory to the company. The physician examining the applicant is not the judge of whether the evidence of insurability is satisfactory: *Meerbach v. Metropolitan Life Ins. Co.*, 46 Pa. Superior Ct. 133, 135. It is the company that makes the decision. Until the application is received by the company evidence of the applicant's insurability has not been furnished or produced. If the applicant dies before the evidence of insurability, on which the company is to determine whether it is satisfactory or not, is furnished to the company, there is no reinstatement of the policy." To same effect is *Iwankow v. Colonial Life Ins. Co.*, 120 Pa. Superior Ct. 114, 181 A. 870.

Likewise is *Riebel v. Prudential Ins. Co.*, 319 Pa. 24, 179 A. 447. A compulsory nonsuit was affirmed in that case. That suit was upon a policy which had lapsed and which contained a reinstatement provision substantially similar to that in the case at bar. The insured applied in writing for reinstatement, paid the arrearages and was examined by a doctor. The day

after the medical examination and before the defendant company had acted upon the reinstatement application, the insured died. Subsequently the defendant disavowed liability and offered to refund the arrearages which had been paid. Holding that under the circumstances there could be no recovery, the Supreme Court said, at p. 27: "After the evidence at the trial was concluded, the trial judge, on motion, entered a compulsory nonsuit, which the court in banc refused to set aside, whereupon plaintiff appealed. The decision below is so clearly right that but little can be said on the subject. Admittedly, the policy properly lapsed for nonpayment of the premium, and the burden of proof of the necessary facts compelling reinstatement was on the plaintiff. Admittedly also it was not in fact reinstated, and the ultimate question is, therefore, was defendant legally required, under the facts above set forth, without more, to approve the application for reinstatement. We agree with the court below that it was not."

In *Smith v. Sovereign Camp Woodmen of the World,* 123 Pa. Superior Ct. 500, 187 A. 290, the same basic principle was applied. This court there denied a recovery upon a beneficial certificate because the insured had not complied with the conditions for reinstatement after allowing his insurance to lapse. Speaking through Judge RHODES, this court there said at p. 506: "It was a condition precedent to the reestablishment of that relationship that the suspended member comply with the terms and conditions stipulated in the constitution, laws, and by-laws of the appellant. Unless there was such a compliance, the beneficiary named in the beneficial certificate had no right of action against the appellant."

In the instant case, the premium due on September 27, 1931, was not paid on or before its due date, nor within the thirty-one day period allowed for the pay-

ment of a premium. The policy, therefore, lapsed and had to be reinstated in order to be in force when the insured died. A condition precedent to reinstatement under the express terms of the policy was the furnishing of evidence of insurability satisfactory to the company. This condition was not fulfilled. It is not sufficient that Mrs. Grentzer applied in writing for reinstatement of the policy and paid the overdue premium. The furnishing of satisfactory evidence of insurability is required in addition.

The question whether the defendant had waived the furnishing to it of evidence of Mrs. Grentzer's insurability was submitted to the jury and decided by them in favor of the defendant. The verdict is supported by the evidence. Dr. Crawford L. Thompson, a physician who has long practiced in Pittsburgh and was a disinterested witness at the time of the trial, testified positively that the reinstatement application signed by Mrs. Grentzer was placed in his hands to make a medical examination of her; that he called at her house for the purpose of examining her on November 4, 1931, which was only two days after Mrs. Grentzer made the application, but could not gain admittance to the house, and that he again called at her house to examine her on Nov. 10th, but she was then already dead. Since the verdict was, in effect for the defendant, all evidence and reasonable inferences therefrom favorable to the defendant must be accepted and all contrary evidence and inferences rejected: *Kissinger v. Pgh. Rys. Co.,* 119 Pa. Superior Ct. 110, 112, 180 A. 137; *Ford v. Reinoehl,* 120 Pa. Superior Ct. 285, 289, 182 A. 120; *Lawrence v. Winterbottom,* 120 Pa. Superior Ct. 292, 296, 181 A. 852; *Hummel v. Quaker City Cabs,* 120 Pa. Superior Ct. 527, 529, 182 A. 658; *Cathcart v. Sears, Roebuck & Co.,* 120 Pa. Superior Ct. 531, 533, 183 A. 113; *Lessy v. A. & P. Tea Co.,* 121 Pa. Superior Ct. 440, 444, 183 A. 657; *Butler v. Met. Life Ins. Co.,* 122

Pa. Superior Ct. 159, 161, 186 A. 395; *Cunningham v. Spangler,* 123 Pa. Superior Ct. 151, 153, 186 A. 173. Reading the evidence in the light most favorable to the defendant, it is manifest that the defendant promptly took the proper step to obtain the evidence of insurability to which it was entitled before deciding whether or not to reinstate the policy, viz., by placing the application in the hands of a physician to examine Mrs. Grentzer. There was, therefore, no waiver.

Appellants contend that the reinstatement provision in the policy is ambiguous. It may be noted that the clause requiring "evidence of insurability satisfactory to the company" is found in the applicable section of the Pennsylvania Insurance Act of 1921, P. L. 682, 723, §410 (k) 40 PS §510. The company is not to be criticized for using the identical language prescribed by the legislature for uniform provisions to be contained in all life insurance policies issued or delivered in this Commonwealth. The language of the reinstatement provision is, we believe, sufficiently clear. The language of President Judge KELLER, speaking for this court in *Lyford v. New England M. Life Ins. Co.,* 122 Pa. Superior Ct. 16, 23, 184 A. 469, is most pertinent: "The clauses in the policy are to be read and construed in their plain, ordinary sense: *Bergholn v. Peoria Life Ins. Co.,* 284 U. S. 489, 492; *Kasarsky v. N. Y. Life Ins. Co.,* 260 N. Y. Supp. 769; and not by *creating* a strained 'doubt' or ambiguity and then resolving it in favor of the insured. We are not to do what Mr. Justice SIMPSON, speaking for the Supreme Court, respecting the construction of contracts of insurance, so vigorously condemned in *Urian v. Scranton Life Ins. Co.,* 310 Pa. 144, 151, 165 A. 21, as follows: "In a number of cases elsewhere, the court created the 'doubt' by a species of argument which would not be tolerated in any kind of contract, and then, having thus found the 'doubt,' resolved it 'in favor of the insured.' So far as we are

concerned, a little further reading of our opinion last referred to (*Levinton v. Ohio Farmers Ins. Co.*, 267 Pa. 448), will disclose a rule which is paramount to the clause above quoted: Where 'language is clear and unambiguous [it] cannot be construed to mean otherwise than what it says:' Ibid. 452. We have often said this (*Bole v. New Hampshire Fire Ins. Co.*, 159 Pa. 53; *Hesse v. Traveler's Ins. Co.*, 299 Pa. 125; *Foundation and Construction Co. v. Franklin Trust Co.*, 307 Pa. 10), and trust we shall continue to adhere to it, so long as our judicial system provides for an interpretation of contracts made by the litigants, and not to the making of contracts for them." The same may be said of the provision for a period of grace of thirty days or one month, after the maturity date of any premium for the payment thereof. The legislature has declared such a period of grace adequate: Act of 1921, P. L. 682, Sec. 410 (b), 40 PS Sec. 510.

Plaintiffs having failed to meet the burden of proof to establish evidence of insurability satisfactory to the company, no recovery could be permitted beyond the return of the last premium, and the trial court would have been justified in directing a verdict for the plaintiffs for the amount of said premium, viz., $29.20. If such a result is a hardship upon the plaintiffs, we can only say as was said by the Supreme Court of the United States in the case of *N. Y. Life Ins. Co. v. Statham*, 93 U. S. 24, 31: "Courts cannot with safety vary the stipulation of the parties by introducing equities for the relief of the insured against their own negligence."

Appellants contend that at the time of the alleged default in the payment of premium (October 28, 1931), the insurance company was indebted to the assured in the sum of $482, being the amount due the assured as the beneficiary of her brother's policies in the same company. This brother had died on September 26,

1931, and it is claimed that proofs were made out at the assured's house by the defendant's representative a few days later.

There is no evidence in the record to support this contention. There is no evidence that Mrs. Grentzer was the beneficiary of any policy which her brother had in the defendant company. We were advised at bar on the argument of this case, and the same was not contradicted, that the brother's policies contained a facility of payment provision. If this be true, Mrs. Grentzer had no right of action upon and could not enforce payment to her of the policies: *Yelda v. W. & S. Life Ins. Co.,* 99 Pa. Superior Ct. 513. There was no absolute debt due from the defendant to Mrs. Grentzer at any time prior to the expiration of the grace period, and without such an absolute indebtedness of the insurer to the insured, the principle relied upon by the appellants could not apply, even if it otherwise would: *Long v. Monarch Ins. Co.,* 30 Fed. (2d) 929; *Mutual Life Ins. Co. v. Girard & Co.,* 100 Pa. 172.

Even if we assume the correctness of the facts predicated by appellants, they would not avoid the lapse of the policy in suit. Even if more than the premium had been due from the defendant to Mrs. Grentzer, on account of a policy on the life of some other person who had died before the premium on the policy in suit became due, the company would not have been bound to apply sufficient of said proceeds to pay the premium on the policy in suit to prevent it from lapsing. That is because the proceeds would have been due the insured on account of an entirely different transaction and under a policy wholly distinct from the one on which the premium was due. The principle which the appellants seek to evoke applies only where the debt due from the insurer to the insured is based upon or grows out of the same policy as the one in litigation and upon which a premium was not paid.

In the case of *Judge v. Prudential Ins. Co.*, 321 Pa. 454, 184 A. 543, suit was brought on a policy on which a premium was due on Mar. 12, 1933. This premium was not paid. The insured died on the 27th of the following month. The plaintiff, the beneficiary, offered to prove that on March 12, 1933, there were dividends due to the insured on other policies which he carried with the defendant, but the trial judge excluded such evidence as irrelevant. The Supreme Court held this to be correct and accordingly affirmed a compulsory non-suit. A number of the decisions relied upon by the appellants in the case at bar were distinguished by the Supreme Court in that case. The opinion of the Supreme Court, Mr. Justice BARNES, is in part as follows, at pp. 456, 457: "Plaintiff's principal contention is that the trial judge erred in refusing to admit evidence of dividends which had accrued on decedent's other policies at the time this policy was forfeited. It is argued that plaintiff should have been permitted to show this, because under our decisions there was a duty upon defendant to apply funds in its hands belonging to the insured to keep his policies in force. The rule upon which appellant relies is well settled: *Girard Life Ins. Co. v. Mutual Life Ins. Co.*, 97 Pa. 15, 100 Pa. 172; *Matlack v. Mutual Life Ins. Co.*, 180 Pa. 360; *Sporrer v. German R. C. K. of St. George*, 70 Pa. Superior Ct. 612; *Holyland v. Protected Home Circle*, 71 Pa. Superior Ct. 66. However, under the facts of the instant case this principle of law has no application. In the cases cited, the funds in the possession of the defendant insurers arose from transactions concerning the very policies sued upon, while here the dividends claimed to be in the hands of the company were the product of separate, distinct and unrelated insurance contracts. This is a most material difference. In a situation of this kind there is no duty to apply such dividends to the payment of the premium of another

policy unless there is a right to appropriate them for that purpose: *Girard Life Ins. Co. v. Mutual Life Ins. Co.,* 97 Pa. 15, 27; *Neel v. Heralds of Liberty,* 71 Pa. Superior Ct. 136. The policy in suit does not mention other policies, and gives defendant no right to apply dividends accruing on other policies to the payment of premiums of this policy. It provides in plain terms that only the dividends 'accruing upon this policy' are available in payment of the premiums thereon. This is one of four options given to the policyholder for the disposition of dividends when actually declared. If the company had applied dividends earned upon other policies to the premium upon this particular policy, then properly a question might have arisen whether it had a legal right to do so under the terms of the policies of this decedent. Dividends are declared upon different classes of policies carried by an insured. It might well be of disadvantage to the company or even to the insured automatically to apply the dividends accruing upon a policy of one class to the payment of a premium upon a policy of an entirely different class of insurance. There might be different beneficiaries named in various policies. It seems plain, even in the absence of an express provision, that each policy should stand by itself, separate and distinct from any other policy." To same effect see *Pister v. Keystone Benefit Asso.,* 3 Pa. Superior Ct. 50.

The same distinction which the Supreme Court pointed out between the Judge case and the Girard, Matlack, Sporrer and Holyland cases exists between the latter and the case at bar.

With reference to an alleged agreement between Mrs. Grentzer and some unnamed supposed agent of the defendant to apply sufficient of the proceeds of the brother's policies to the payment of the premium on the policy in suit, it is sufficient that no agent of the defendant would have authority to make any such agree-

ment, in view of the express provisions of the policy prescribing how premiums shall be paid and limiting the authority of agents. The policy expressly stipulates that "All premiums or installments of premiums are payable at the Company's Home Office, but may be paid to an authorized agent of the Company on or before the dates when due, in exchange for official receipts countersigned by such authorized agent." The policy further provides that "No agent is authorized to waive forfeitures or to make, modify or discharge contracts or to extend the time for paying a premium. No provision of this Policy can be waived or modified in any case except by an endorsement hereon signed by the President, a Vice-President or the Secretary." It is not contended that the premium due on September 27, 1931, was paid to the agent in exchange for the company's official receipt for said premium. If the alleged agreement between Mrs. Grentzer and the agent were valid, it would clearly modify the contract with reference to the payment of premiums, which is expressly beyond the power of any agent. Such a modification, to be valid, would require an endorsement on the policy signed by the President, a Vice-President or the Secretary. Such an alleged agreement might also have the effect of extending the time for paying a premium, which is also expressly excluded from the authority of any agent. The offer of such an alleged agreement was, therefore, rightly excluded. That limitations in insurance policies upon the authority of agents are valid and will be enforced, is shown by the following decisions of this court: *Youngblood v. Prudential Ins. Co.,* 109 Pa. Superior Ct. 20, 165 A. 666; *Price v. Mutual Life Ins. Co.,* 109 Pa. Superior Ct. 419, 167 A. 233; *Potter T. & T. Co. v. Colonial Life Ins. Co.,* 114 Pa. Superior Ct. 436, 174 A. 587; *Prudential Ins. Co. v. Ordonoff,* 122 Pa. Superior Ct. 485, 186 A. 391.

In addition, plaintiffs proved that the premium due

September 27, 1931, had been paid by Mrs. Grentzer's check dated November 2, 1931. The plaintiffs thereby recognized that the policy in suit had lapsed, and required reinstatement. Evidently the deceased also understood that her policy had lapsed, because she admittedly signed the application to reinstate the policy. Plaintiffs' actions, as well as those of the deceased, are inconsistent with the position that the premium was to be paid out of the amounts alleged to have been due under the brother's policies.

The other contentions of appellants, except the one which complains about the refusal of a new trial for after-discovered evidence, relate to rulings on the admission or rejection of evidence. If the court below could, or should have, entered a compulsory nonsuit, or directed a verdict simply for the return of the last premium, or entered judgment n. o. v. for the amount of said last premium, then any rulings upon the admissibility of evidence become of no consequence. None of the evidence in question would change the fundamental facts that the policy was allowed to lapse for nonpayment of the premium due on September 27, 1931, and that satisfactory evidence of insurability was never thereafter furnished the defendant. Those basic facts are all that are necessary to the determination, as a matter of law, that there can be no recovery, beyond the amount of the last premium. A case will not be reversed for harmless error: *Duffel's Est.* 317 Pa. 214, 216, 176 A. 731; *Paley v. Trautman,* 317 Pa. 589, 592, 177 A. 819.

Appellants' last contention relates to the proposition that the plaintiffs should have been granted a new trial for after-discovered evidence. The plaintiffs are not entitled to recover more than the last premium as a matter of law.

The law governing new trials for after-discovered evidence has been clearly set forth in *Commonwealth*

**36**

*v. Mellon,* 81 Pa. Superior Ct. 20, pp. 25, 26 by the present President Judge KELLER, as follows: "The rules governing the granting of new trials because of after-discovered evidence are well settled in this State. To entitle a defendant to a new trial on this ground the evidence must have been discovered since the trial, and be such as could not have been obtained at the trial by the use of reasonable diligence; it must not be simply corroborative or cumulative, or merely to impeach the credibility of a witness; and it must be such as would likely result in a different verdict if a new trial were granted: *Com. v. Brady,* 76 Pa. Superior Ct. 488; *Com. v. Carter,* 272 Pa. 551; *Com. v. Flanagan,* 7 W. & S. 415. Such an application is not governed by the strict technical rules applicable to a writ of error, but is addressed to the sound discretion of the court: *Boyd v. Boyd,* 1 Watts 365, 366; and the exercise of this discretion by the court in refusing a new trial will be reversed on appeal only where it has been clearly abused: *Com v. Hine,* 213 Pa. 97; *Hunter v. Bremer,* 256 Pa. 257, 266; *Goldstein v. E. Fallowfield Twp.,* 43 Pa. Superior Ct. 158, 167." To same effect see *Hornick v. Bethlehem Mines Corp.,* 310 Pa. 225, 228, 165 A. 36; *Trout v. Mendon Grange Fire Ins. Co.,* 113 Pa. Superior Ct. 403, 405, 173 A. 743; *Com. v. Russella,* 117 Pa. Superior Ct. 359, 365-366, 177 A. 506; *Com. v. Dougherty,* 118 Pa. Superior Ct. 545, 548, 179 A. 223; and *Hedley v. Snipes,* 124 Pa. Superior Ct. 396, 403, 188 A. 617.

The alleged after-discovered evidence was to the following effect: "(a). That Mr. Davis, the field supervisor of the insurance company, who had testified for the company, had notified Mr. Tully our newly discovered witness who had worked for the company from 1929 to 1934, that the insurance company had agreed to grant the request of the assured to have her premium deducted from the money that was due by the company

to her; (b) that Mr. Tully knew that the company, because of the financial depression existing, had waived all medical examinations where the premium had been paid within thirty days after it had lapsed."

One of the essential requirements for a new trial on the ground of after-discovered evidence is that such evidence could not have been obtained at the trial by the use of reasonable diligence. There is no averment whatsoever in the plaintiffs' "Affidavit as to After Discovered Evidence," attached to their additional reasons for a new trial, to the effect that the alleged after-discovered evidence could not have been obtained at the trial by the use of reasonable diligence. Nor is there any inherent reason apparent why the alleged after-discovered evidence could not have been obtained at the trial by the exercise of reasonable diligence. The alleged after-discovered evidence all relates to matters which supposedly occurred long before the trial. This alone would also be sufficient to justify affirmance of the action of the court below.

The plaintiffs' affidavit does not state specifically when the alleged after-discovered evidence was uncovered. The affidavit simply states that the plaintiffs learned of the additional evidence "subsequent to the trial" of this case. In *Hornick v. Bethlehem Mines Corp.*, supra, the Supreme Court said with reference to a similar vague averment, at p. 230: "It will be noticed that in its petition, defendant does not state specifically when it learned the alleged fact on which it grounds its application; it merely avers that the evidence was discovered 'since the trial;' as time is one of the decisive elements in the consideration of the question, such an indefinite statement of the time of discovery is without value."

We see no error which would warrant a reversal of the judgment or justify a new trial.

The assignments of error are overruled and judgment affirmed.